NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

TIFFANY M., *Appellant*,

*v.*

DEPARTMENT OF CHILD SAFETY, T.M., O.M., D.C., *Appellee*.

No. 1 CA-JV 16-0087
FILED 9-8-2016

Appeal from the Superior Court in Maricopa County
No. JS17490
The Honorable Connie Contes, Judge

**AFFIRMED**

COUNSEL

John L. Popilek, P.C., Scottsdale
By John L. Popilek
*Counsel for Appellant*

Arizona Attorney General's Office, Phoenix
By Amber E. Pershon
*Counsel for Appellee Department of Child Safety*

---

**MEMORANDUM DECISION**

Chief Judge Michael J. Brown delivered the decision of the Court, in which Presiding Judge Andrew W. Gould and Judge Kenton D. Jones joined.

---

**B R O W N**, Chief Judge:

¶1        Tiffany M. ("Mother") appeals the juvenile court's order terminating her parental rights to her three youngest children, T.M. (born in 2010), O.M. (born in 2011), and D.C. (born in 2013). For the following reasons, we affirm.

**BACKGROUND**

¶2        Mother's children were first taken into Department of Child Safety ("DCS") custody in November 2012 following reports that Mother had abused one of her older children. In March 2013, Mother was convicted of child abuse and placed on probation for eight years. The children were adjudicated dependent and DCS developed a case plan for family reunification concurrent with severance and adoption. DCS's reunification plan required Mother to refrain from domestic violence, understand the harmful effects of domestic violence on families, demonstrate adequate parenting skills, and avoid abusive partners, particularly Odell C. ("Father"). DCS offered various services to Mother, including psychological evaluation, anger-management classes, domestic-violence therapy, trauma therapy, a bonding assessment, family therapy, parent aide, and a parenting coach.

¶3        In April 2014, DCS filed a petition to terminate Mother and Father's parental rights to five children, including the three children at issue in this appeal.[1] Relying on Arizona Revised Statutes ("A.R.S.") section 8-533(B)(8)(c), DCS alleged that the children had been in out-of-home care

---

[1]        Mother has eight children, five of them in common with Father. Their oldest child is an adult and the children at issue in this severance proceeding are Mother and Father's three youngest children. The juvenile court also terminated Father's parental rights but he is no longer a party to this appeal. Additionally, in January 2013 the court terminated Mother's rights to two of Mother's older children.

pursuant to a court order for greater than fifteen months and there was a substantial likelihood Mother would not be capable of exercising proper parental control in the near future. After a two-day hearing in December 2015, the juvenile court determined that (1) DCS had proven the statutory ground for termination by clear and convincing evidence, and (2) severance was in the children's best interests. The court issued a signed order granting the petition and Mother's timely appeal followed.

## DISCUSSION

**¶4** To support termination of parental rights, one or more of the statutory grounds for termination must be proven by clear and convincing evidence. A.R.S. § 8-537(B); *Shawanee S. v. Ariz. Dep't of Econ. Sec.*, 234 Ariz. 174, 176–77, ¶ 9 (App. 2014). We view the evidence in the light most favorable to sustaining the juvenile court's findings. *Christina G. v. Ariz. Dep't of Econ. Sec.*, 227 Ariz. 231, 234, ¶ 13 (App. 2011). We will accept the juvenile court's findings of fact unless no reasonable evidence supports those findings. *Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 280, ¶ 4 (App. 2002).

**¶5** Pursuant to A.R.S. § 8–533(B)(8)(c), the juvenile court could properly sever a parent's rights if (1) the children had been in out-of-home placement for fifteen months or longer; (2) the parent had been unable to remedy the circumstances causing the children to be in out-of-home placement; and (3) a substantial likelihood existed that the parent would not be able to properly care for the children in the near future. Mother argues there was insufficient evidence to show a substantial likelihood that she would be incapable of effective parenting in the near future.[2] Specifically, she contends the juvenile court inappropriately relied on Mother's psychological evaluations performed in July 2013, before she made extensive efforts to participate in family reunification services to restore the parent-child relationship.

**¶6** To evaluate Mother's argument, we look initially to the juvenile court's relevant factual findings. First, Mother was offered various reunification services, including parent aide, supervised visits,

---

[2] Mother does not challenge the juvenile court's findings that (1) the children were in out-of-home placement for more than fifteen months, (2) DCS offered appropriate reunification services, and (3) Mother was unable to remedy the circumstances that caused the children to be in out-of-home placement. Nor does Mother challenge the court's determination that termination of her parental rights was in the children's best interests.

psychological evaluations, domestic violence counseling, trauma therapy, and visit coaching/assessments through Cradle to Crayons. Second, Dr. Thal opined in July 2013 that "given Mother's personality deficits, her continued involvement in destructive relationships and her lack of adequate resources, the children should not be returned especially if Mother continues to have contact with [Father]." Third, Mother stopped the trauma therapy she had been receiving in March 2015 with Cradle to Crayons and did not start again until six months later. Fourth, Mother completed domestic violence counseling, but indicated in her testimony that she "would allow [Father] to be around her and her children." Fifth, the parent aide was closed unsuccessfully because objectives were not met. Mother had one unsupervised visit (which was still monitored by a family coach) in January 2015; the following month she requested to have the coach present for the full visit time for assistance and support. Mother was then moved back to fully supervised visits.

¶7        Mother does not dispute any of the court's factual findings, and our own review of the record indicates the findings are supported by the record. Mother contends, however, that the psychological evaluations conducted in 2013 do not support the court's findings because they do not reflect whether her ability to exercise proper parental care improved after she participated in services. As part of the dependency proceedings and as a term of her probation, Mother was assigned a parent aide and participated in child-parent psychotherapy, family time coaching, and trauma therapy with Cradle to Crayons between January 2014 and March 2015. Mother also participated in domestic violence counseling through Eve's Place between October 2013 and May 2015. In addition, Mother completed anger management, nurturing parent, and active parent classes in 2013 and 2014. But in Mother's July 2013 evaluation, the psychologist concluded there was a poor likelihood that Mother would be able to demonstrate minimally adequate parenting skills "even with proposed or existing interventions." This opinion was confirmed by a second psychological evaluation performed in December 2013, which concluded it would be unlikely that Mother could "monitor and safely care for children . . . even with appropriate resources aimed at treating her condition."

¶8        Without question, given the complexities of this case, a psychological evaluation performed in preparation for the termination hearing would have been helpful to the juvenile court and the parties. However, the absence of an updated evaluation does not mean the juvenile court was required to ignore the existing evaluations. Instead, the court was in the best position to weigh their relevance in light of the many other factors the court also considered. *See Jesus M.*, 203 Ariz. at 280, ¶ 4 ("The

juvenile court, as the trier of fact in a termination proceeding, is in the best position to weigh the evidence, observe the parties, judge the credibility of witnesses, and make appropriate findings.").

**¶9** Moreover, the record is clear that the pre-services psychological evaluations were not the only evidence on which the court relied in granting the petition to terminate Mother's parental rights. Notwithstanding Mother's successful completion of various services, the record reflects ongoing concerns that were never resolved throughout the three years the children were in out-of-home placement prior to the termination hearing. After parent aide services closed unsuccessfully in February 2014, a third psychologist concluded that Mother would be unlikely to develop the skills necessary to parent her children in the foreseeable future. As noted by the juvenile court, DCS also presented evidence that despite Mother's consistent participation in some services, she failed to complete other services as recommended, including her trauma therapy. *See Raymond F. v. Ariz. Dep't of Econ. Sec.*, 224 Ariz. 373, 379, ¶ 28 (App. 2010) (finding that Father failed to complete services in which he participated, therefore supporting the court's order of severance). Mother also cancelled or missed Cradle to Crayons visits with her children on several occasions.

**¶10** In addition, progress reports prepared by DCS case managers throughout 2014 and 2015 consistently expressed continuing concerns about Mother's ability to parent, even after Mother's participation in numerous family reunification services. In a DCS progress report dated November 24, 2015, the case manager continued to express concerns regarding Mother's ability to care for the children at that time, even though she was "making progress" through participation in services. The case manager's concerns were based on the young ages and special needs[3] of the children, as well as Mother's continued contact with Father, despite their history of domestic violence. Mother testified that she and Father were in a "domestic violence relationship," which tracks the concerns identified by DCS at the outset of the dependency proceeding when it directed that Mother avoid Father and other abusive partners. But Mother failed to take the necessary steps to show she properly acknowledged the harmful risks she and the children would face if she allowed continued contact with

---

[3]     At least one of the children, O.M., has medical needs requiring specialized care.

Father.[4]  In explaining the domestic violence, Mother testified initially that she and Father "had an argument;" later, she stated he "struck her on a number of occasions" and said she was "physically assaulted by dad in front of the kids."  And, although Mother testified that she called police when Father arrived at her home in February 2015, she did not inform the case manager of the incident or provide a police report.  Notwithstanding Father's behavior, Mother stated she would like to see him get visitation "through the courts" and "he's a good person with kids."

¶11        Consistent with the progress reports prepared by previous case managers and the opinions expressed by the medical professionals who conducted Mother's psychological evaluations, the case manager who testified at the termination hearing opined that Mother would not be able to exercise proper parental care of the three children in the near future. Considering all of the evidence presented to the juvenile court, and the lack of any objection to the court's factual findings, we conclude that despite Mother's participation in services and family reunification efforts, reasonable evidence supports the juvenile court's finding that a substantial likelihood existed that Mother would not be capable of exercising proper and effective parental care and control in the near future. *See* A.R.S. § 8–533(B)(8)(c).

## CONCLUSION

¶12        Because reasonable evidence supports the juvenile court's order terminating Mother's parental rights, we affirm.



AMY M. WOOD • Clerk of the Court
FILED:  AA

---

4        Father, a convicted felon, participated in the termination hearing from prison; he has since been released.