NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

TINA V., *Appellant*,

*v.*

DEPARTMENT OF CHILD SAFETY, L.C., B.C., *Appellees*.

No. 1 CA-JV 18-0148
FILED 10-25-2018

Appeal from the Superior Court in Yavapai County
No. P1300JD201600055
The Honorable Anna C. Young, Judge

**AFFIRMED**

COUNSEL

Law Office of Florence M. Bruemmer, PC, Anthem
By Florence M. Bruemmer
*Counsel for Appellant*

Arizona Attorney General's Office, Tucson
By Laura J. Huff
*Counsel for Appellee Department of Child Safety*

## MEMORANDUM DECISION

Judge Peter B. Swann delivered the decision of the court, in which Presiding Judge Kenton D. Jones and Judge David D. Weinzweig joined.

**S W A N N**, Judge:

¶1          This is an appeal from an order severing parental rights.  We affirm because reasonable evidence supports the severance order.

## FACTS AND PROCEDURAL HISTORY

¶2          Tina V. ("Mother") and David C. ("Father") are the biological parents of minor children L.C. and B.C. (collectively, "Children").[1]

¶3          In August 2016, after Father's arrest for domestic violence against Mother (among other things) and Mother's arrest for aggravated driving under the influence, the Department of Child Safety removed the Children from their parents' care.  The Department also found that the family was living in a musty and trash-strewn recreational vehicle with an inoperable water pump, a leaky roof, and multiple animals.  Mother admitted to improper use of psychiatric medication as well as illegal drug use, and the Department discovered that she had a history of substance-abuse problems, mental-health problems, and domestic violence with Father.

¶4          The Department offered Mother substance-abuse treatment and education, random urinalysis, behavioral-health treatment, counseling, domestic-violence education, a psychological evaluation, medication monitoring, parenting classes, parent-aide services and supervised visits with L.C., and therapeutic visits and visit coaching with B.C., who has special behavioral-health needs.

¶5          Mother participated in services.  But her test results showed inconsistent and often excessive use of prescribed drugs over 16 months of random urinalysis.  She also missed multiple tests, once tested positive for

---

[1]     Father's parental rights were severed but he is not a party to this appeal.

excessive alcohol, and sometimes failed to provide urine samples in a manner compliant with the collection facilities' requirements.

¶6            The Department reported in July 2017 that Mother had admitted not taking her psychiatric medications as prescribed. Mother then made similar admissions in November 2017, several months after reports that Mother appeared heavily medicated at two visits. Mother failed to participate in counseling during the same period.

¶7            Mother and Father continued to live in the recreational vehicle, moving it between parking lots and staying in motels or with friends during colder weather, until the vehicle was impounded in August 2017. Around the same time, Father was placed in housing for the seriously mentally ill and reported that Mother had told him he did not need to take his psychiatric medication. Mother soon had Father discharged to move out of county, in violation of his probation conditions. He was subsequently incarcerated, a situation for which Mother refused to acknowledge any responsibility. Mother also refused to acknowledge domestic violence in her relationship with Father.

¶8            The Department moved to sever Mother's relationship with the Children in November 2017. Mother, with the support of her guardian ad litem, requested a "paper trial" and stipulated to the Department's exhibits. The court questioned Mother and determined that her waiver of trial rights was knowing, intelligent, and voluntary. The court then granted Mother's request to be excused from the trial. Her counsel and guardian ad litem remained and were afforded the opportunity to cross-examine the Department's sole witness, the case manager.

¶9            The case manager testified to the following. The Children were adoptable teenagers. L.C. had no opinion regarding the case plan, but expressed happiness and a desire to remain with her adoptive grandparental placement. And though the grandparents had previously been unable to maintain B.C. in their home because of his behavioral-health issues, they remained willing to adopt B.C. once he was ready to leave his therapeutic placement, which had offered to provide continuing support. The grandparents had remained in contact with B.C. and experienced increasingly positive visits with him. While upset about not knowing his future, B.C. said he did not want to disappoint his parents by "choos[ing] a side." Evidence established that B.C. experienced increased anxiety on several occasions after having contact with Mother, as well as after she cancelled visits on short notice.

**¶10**        Mother's counsel submitted a written closing argument that included Mother's statements.  Mother wrote that she loved the Children, had tried to participate in all services, did not drink, was not "messed up on medication," had a stable living situation, and would be able to purchase a home once she received back pay.

**¶11**        The court severed Mother's parental rights to the Children under A.R.S. § 8-533(B)(2), (B)(3), and (B)(8)(c).  Mother appeals.

## DISCUSSION

**¶12**        Mother contends that the Department failed to present sufficient evidence to support termination of her parental rights.  To sever a parent-child relationship, the juvenile court must find by clear and convincing evidence at least one of the grounds set forth in A.R.S. § 8-533(B), and the court must find by a preponderance of the evidence that severance is in the child's best interests.  *Kent K. v. Bobby M.*, 210 Ariz. 279, 288, ¶ 41 (2005); *Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 249, ¶ 12 (2000).  We accept the court's findings of fact unless they are not supported by any reasonable evidence, and we will affirm the severance order unless it is clearly erroneous.  *Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 280, ¶ 4 (App. 2002).  We hold that reasonable evidence supports the juvenile court's severance of Mother's parental rights under A.R.S. § 8-533(B)(8)(c).[2]

**¶13**        Severance under § 8-533(B)(8)(c) requires proof that a child has been in out-of-home placement for a cumulative total period of at least 15 months, the Department has made a diligent effort to provide appropriate reunification services, the parent has been unable to remedy the circumstances that cause the child to be in an out-of-home placement, and a substantial likelihood exists that the parent will not be capable of exercising proper and effective parental care and control in the near future. The circumstances that cause the child to be in an out-of-home placement are those "'existing at the time of the severance' that prevent a parent from being able to appropriately provide for his or her children." *Marina P. v. Ariz. Dep't of Econ. Sec.*, 214 Ariz. 326, 330, ¶ 22 (App. 2007) (citation omitted).

---

[2]        We therefore do not address whether the evidence also supported severance under § 8-533(B)(2) and (B)(3).  *See Jesus M.*, 203 Ariz. at 280, ¶ 3 ("If clear and convincing evidence supports any one of the statutory grounds on which the juvenile court ordered severance, we need not address claims pertaining to the other grounds.").

**¶14** The record shows that the Children were in out-of-home placement for at least 15 months, during which time the Department offered Mother appropriate reunification services. Throughout the removal period, including during the period immediately preceding the severance trial, Mother missed urinalysis tests and provided samples that showed inconsistent and abusive use of her prescribed psychiatric medications. Further, she admitted to the Department several times that she was not taking her medications as prescribed. Mother's continued inability to manage her prescription drug use was by itself sufficient to show that she had been unable to remedy the circumstances that caused the Children to be in out-of-home placements, and that it was substantially likely she would be incapable of exercising proper and effective parental care and control in the near future.

**¶15** We further hold that reasonable evidence supports the juvenile court's determination that severance of Mother's parental rights served the Children's best interests. In considering a child's best interests, the juvenile court must determine whether, based upon the totality of the evidence, the child would benefit from severance or be harmed by continuation of the parent-child relationship. *Alma S. v. Dep't of Child Safety*, 245 Ariz. 146, 150–51, ¶ 13 (2018). Relevant factors include whether the child would be at risk of abuse or neglect if placed in the parent's care, whether the child's existing placement is meeting the child's needs, whether the child is adoptable, and whether an adoptive placement is immediately available. *Raymond F. v. Ariz. Dep't of Econ. Sec.*, 224 Ariz. 373, 383, ¶ 30 (App. 2010); *Christina G. v. Ariz. Dep't of Econ. Sec.*, 227 Ariz. 231, 238, ¶ 27 (App. 2011); *Linda V. v. Ariz. Dep't of Econ. Sec.*, 211 Ariz. 76, 80, ¶ 17 (App. 2005).

**¶16** Mother's sustained misuse and abuse of her psychiatric medication established with substantial likelihood her continued inability to safely and successfully parent the Children. Further, the evidence established not only the Children's adoptability, but also the existence of an appropriate adoptive placement, L.C.'s desire to remain with the placement, B.C.'s need for certainty, and Mother's exacerbation of B.C.'s anxiety.

## CONCLUSION

**¶17**      Reasonable evidence supports the juvenile court's severance order.  We therefore affirm.



AMY M. WOOD • Clerk of the Court
FILED:  AA