NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

———————————————

JENNIFER S., *Appellant*,

*v.*

DEPARTMENT OF CHILD SAFETY, J.B., W.S, *Appellees*.

No. 1 CA-JV 18-0113
FILED 11-20-18

———————————————

Appeal from the Superior Court in Maricopa County
No.  JD 529812
The Honorable Arthur T. Anderson, Judge

**AFFIRMED**

———————————————

COUNSEL

The Stavris Law Firm, LLC, Scottsdale
By Christopher Stavris
*Counsel for Appellant*

Arizona Attorney General's Office, Mesa
By Amanda Adams
*Counsel for Appellee, Department of Child Safety*

---

**MEMORANDUM DECISION**

Judge Michael J. Brown delivered the decision of the Court, in which Presiding Judge James P. Beene and Judge James B. Morse Jr. joined.

---

**B R O W N**, Judge:

¶1 Jennifer S. ("Mother") appeals the juvenile court's order terminating her parental rights to her children, J.B. and W.S. For the following reasons, we affirm.

## BACKGROUND

¶2 In 2012, Mother was four months pregnant with J.B. when the Department of Child Safety ("DCS") received a report that Mother tested positive for methamphetamine. When J.B. was born, however, both she and Mother tested negative for methamphetamine, so DCS did not remove her from Mother's care. In 2016, when W.S. was born, DCS received a report from the hospital that both he and Mother tested positive for methamphetamine. A DCS caseworker visited Mother in the hospital, and she admitted having used methamphetamine in the beginning of her pregnancy with W.S. and that she recently began using it again. DCS took the children into temporary physical custody and placed them in foster care.

¶3 DCS filed a dependency petition alleging Mother was unable to parent due to neglect, substance abuse, and failure to provide the children with the basic necessities of life. At the time the petition was filed, Mother did not have stable housing or income. Due to a criminal conviction in Michigan, Mother was required to register as a sex offender in Arizona and was not allowed to have contact with children without consent from her probation officer. She moved often, staying with friends, and she was arrested twice for failing to provide her new address to her probation officer. Following a hearing, the juvenile court found the children dependent as to Mother and adopted a case plan of family reunification.

¶4 DCS offered services to Mother, including substance abuse assessment and treatment. From March to June 2016, Mother tested positive for methamphetamine in 28 out of 30 random drug tests. Mother was incarcerated from July 2016 to January 2017 for a probation violation,

and in the first three months after she was released, she tested positive for methamphetamine 8 out of 11 times. Mother was referred to TERROS for substance abuse treatment four times but was closed out early each time due to noncompliance and incarceration.

¶5 In the early stages of the dependency, Mother's probation officer allowed supervised visitation with the children. However, due to noncompliance with probation terms, Mother's new probation officer informed DCS in January 2017 that she would no longer allow Mother to participate in supervised visits, so DCS suspended visitation. The last time Mother had a visit with the children was in January 2017.

¶6 In April 2017, the juvenile court approved changing the case plan to severance and adoption. DCS then moved to terminate Mother's parental rights due to neglect, chronic substance abuse, six months' out-of-home placement as to W.S. and nine months' out-of-home placement as to both children. Mother was released from jail in July 2017 and was taken directly to Destiny Sober Living ("Destiny"), an in-patient treatment center. She has not tested positive for methamphetamine since she entered Destiny. In December 2017, DCS filed an amended motion to terminate, adding a ground for fifteen months' out-of-home placement.

¶7 Following a contested hearing, the court granted DCS's motion to terminate Mother's rights on each of the grounds alleged and found that termination was in the children's best interests. This timely appeal followed.

**DISCUSSION**

¶8 Before a court can terminate parental rights, it must find by clear and convincing evidence at least one statutory ground articulated in Arizona Revised Statutes ("A.R.S.") section 8–533(B) and then find, by a preponderance of the evidence, that termination is in the child's best interests. *Kent K. v. Bobby M.*, 210 Ariz. 279, 286, ¶ 22 (2005). We will affirm an order terminating parental rights if it is supported by reasonable evidence. *Jordan C. v. Ariz. Dep't of Econ. Sec.*, 223 Ariz. 86, 93, ¶ 18 (App. 2009). As the trier of fact, "[t]he juvenile court is in the best position to weigh the evidence, observe the parties, judge the credibility of witnesses, and make appropriate findings." *Christina G. v. Ariz. Dep't of Econ. Sec.*, 227 Ariz. 231, 234, ¶ 12 (App. 2011). We therefore view the evidence "in the light most favorable to sustaining the court's decision." *Jordan C.*, 223 Ariz. at 93, ¶ 18 (citation omitted).

### A. Out-of-Home Placement

**¶9**       To terminate parental rights on the fifteen-month ground, a court must find (1) the children have been in an out-of-home placement for at least fifteen months, (2) DCS "made a diligent effort to provide appropriate reunification services," (3) the parent was "unable to remedy the circumstances" necessitating the out-of-home placement, and (4) a substantial likelihood existed that the parent would be incapable of "exercising proper and effective parental care and control in the near future." A.R.S. § 8–533(B)(8)(c); *e.g.*, *Jordan C.*, 223 Ariz. at 96 n.14, ¶ 31.

**¶10**      Mother challenges the juvenile court's finding that she has been unable to remedy the circumstances that caused the children to be in out-of-home placement. Mother emphasizes that at the time of the termination hearing she had been sober for nine months. She further argues she has made an appreciable, good-faith effort to comply with remedial programs and thus cannot be found to have substantially neglected to remedy the circumstances that caused the children to be in an out-of-home placement, namely, her drug use. However, under the fifteen-month ground, DCS had to prove Mother was *unable to remedy* the circumstances that caused the children to be in an out-of-home placement, not that she *substantially neglected* to remedy them.[1]   A.R.S. § 8–533(B)(8)(c) (emphasis added). The fifteen-month ground focuses on the parent's actual success in remedying the circumstances, rather than the level of the parent's effort in doing so. *See Marina P. v. Ariz. Dep't of Econ. Sec.*, 214 Ariz. 326, 329, ¶ 20 (App. 2007) (discussing the standard in the context of the nine-month ground). Mother admitted she has been using methamphetamine since 2009, including when she was pregnant with W.S. For the first year of the dependency, though Mother participated in random drug testing, she consistently tested positive for methamphetamine and was unable to complete TERROS drug treatment.

---

[1]      Mother also argues the juvenile court erred in finding that DCS made diligent efforts to provide her with "rehabilitation" services, which we construe as an assertion that the reunification services DCS provided were inadequate. But Mother does not suggest what additional services should have been provided. Regardless, because she failed to object in the juvenile court regarding the adequacy of reunification services provided to her, the issue is waived. *Shawanee S. v. Ariz. Dep't of Econ. Sec.*, 234 Ariz. 174, 179, ¶ 16 (App. 2014) (holding that a parent who fails to object to the adequacy of reunification services is precluded from raising the issue on appeal).

**¶11** Mother also challenges the juvenile court's finding that there was a substantial likelihood she would be incapable of exercising proper and effective parental care in the near future. The court acknowledged Mother had been sober since placement at Destiny but explained that she "lives in a structured and supportive environment—untested as an independent and responsible parent" and, at the time of the hearing, had not proven that she could stay sober outside of such a controlled environment. Notwithstanding Mother's efforts, the court found a "substantial likelihood that she will not be capable of exercising proper and effective parental care and control in the near future due to substance abuse, lack of housing, and financial instability."

**¶12** The record supports these findings. Mother testified she was starting a new job the week after the termination hearing, but she still had not established a stable residence or source of income. In fact, Mother repeatedly asked her probation officer if she could return to live with her boyfriend even though it would violate the terms of her probation. Mother's probation officer testified she was concerned Mother would go back to living with her boyfriend upon leaving Destiny, because she previously lived with him, and it was not "a healthy environment for her to maintain sobriety."

**¶13** The probation officer also testified that Mother needed to demonstrate that she could remain sober in society before she would consider allowing Mother to have contact with the children. Similarly, the DCS case manager testified that Mother would need to demonstrate six to nine months of sustained sobriety in an uncontrolled environment before their concerns would be alleviated about her chronic substance abuse. The case manager opined that it was unlikely Mother would be capable of exercising parental care in the future because of her instability. Thus, reasonable evidence supports the court's finding that termination was warranted based on fifteen months' out-of-home placement. Because we affirm on this basis, we do not address the alternative grounds for termination. *See Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 251, ¶ 27 (2000).

### B. Best Interests

**¶14** Mother argues the court erred by finding termination of her parental rights to be in the children's best interests. "At the best-interests stage of the analysis, we can presume that the interests of the parent and child diverge because the court has already found the existence of one of the statutory grounds by clear and convincing evidence." *Alma S. v. Dep't*

*of Child Safety*, 245 Ariz. 146, 150, ¶ 12 (2018). Therefore, once the court finds a parent to be unfit, the court's focus shifts to the child's interests as distinct from those of the parent. *Id.*

**¶15**       Mother argues termination of her parental rights is not in the children's best interests because she needs her children as much as they need her, she deserves another chance with her children, and she has been working on her sobriety. She relies on this court's opinion in *Alma S. v. Dep't of Child Safety*, 244 Ariz. 152 (App. 2017); however, that opinion has been vacated by our supreme court, which explained that "courts must not . . . subordinate the interests of the child to those of the parent once a determination of unfitness has been made." *Alma S.*, 245 Ariz. at 151, ¶ 15.

**¶16**       Termination is in the child's best interests if the child will either benefit from severance or be harmed if severance is denied. *Demetrius L. v. Joshlynn F.*, 239 Ariz. 1, 4, ¶ 16 (2016) (citation omitted). "When a current placement meets the child's needs and the child's prospective adoption is otherwise legally possible and likely, a juvenile court may find that termination of parental rights, so as to permit adoption, is in the child's best interests." *Id.* at ¶ 12. Here, the juvenile court found the children's respective placements to be stable, substance free, and nurturing homes; the children are bonded to their placements; and they have improved emotionally, developmentally, and medically.

**¶17**       The record supports these findings. Because J.B. seems to do better in a placement where she is the only child, the children are in separate homes. Their placements provide for regular contact between the children and they plan to continue doing so. The DCS case manager testified the children's respective placements are willing to adopt them, and the children will benefit from termination because it would "further the plan of adoption and provide the children with permanency and stability in a substance free and a stable home." Therefore, the court did not err in finding that termination of Mother's rights is in the children's best interests.

**CONCLUSION**

**¶18**      The juvenile court's order terminating Mother's parental rights to the children is affirmed.

