NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

TIFFANI G., *Appellant*,

*v.*

DEPARTMENT OF CHILD SAFETY, I.O., Z.O., *Appellees*.

No. 1 CA-JV 18-0423
FILED 5-14-2019

Appeal from the Superior Court in Maricopa County
No. JD530093; JS518961
The Honorable Karen L. O'Connor, Judge

**AFFIRMED**

COUNSEL

Vierling Law Offices, Phoenix
By Thomas A. Vierling
*Counsel for Appellant*

Arizona Attorney General's Office, Tucson
By Autumn Spritzer
*Counsel for Appellee Department of Child Safety*

---

**MEMORANDUM DECISION**

Judge James P. Beene delivered the decision of the Court, in which Presiding Judge David D. Weinzweig and Judge Kent E. Cattani joined.

---

**B E E N E**, Judge:

¶1        Tiffani G. ("Mother") appeals the superior court's order terminating her parental rights to her children, I.O. and Z.O. (collectively, the "Children").[1]  For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2        In June and July of 2016, the Department of Child Safety ("DCS") removed the Children from Mother's custody and filed a dependency petition after she was involuntarily committed and hospitalized for three weeks due to mental illness.  The petition alleged that the Children were dependent as to Mother due to mental health issues and neglect.  Mother participated in reunification services and, in September 2017, DCS returned the Children to Mother's physical custody.  The court dismissed the dependency action.

¶3        In March 2018, DCS again removed the Children after Mother was again involuntarily committed and hospitalized due to mental illness.  DCS initiated a second dependency action, alleging the Children were dependent as to Mother on grounds of mental illness.  DCS then filed a termination action in May 2018, alleging Mother was unable to discharge parental responsibilities due to mental illness, *see* Ariz. Rev. Stat. ("A.R.S.") § 8-533(B)(3), and that the Children had previously been returned to Mother after being removed, *see* A.R.S. § 8-533(B)(11).

¶4        After a dependency/termination hearing, the superior court found the Children dependent.  It also found DCS had proven both statutory grounds for termination and that termination was in the Children's best interests.

---

[1]        The Children's father's parental rights were terminated in 2018.  He is not a party to this action.

**¶5** Mother timely appealed. We have jurisdiction pursuant to Article 6, Section 9, of the Arizona Constitution, and A.R.S. §§ 12-2101(A)(1), -120.21(A)(1).

## DISCUSSION

**¶6** Mother argues on appeal that the court abused its discretion by finding: (1) DCS proved the recurrent-removal ground pursuant to A.R.S. § 8-533(B)(11); (2) DCS proved the mental-illness ground pursuant to A.R.S. § 8-533(B)(3); and (3) termination was in the Children's best interests. Because we find sufficient evidence supports the mental-illness ground, we need not address the recurrent-removal ground. *See Crystal E. v. Dep't of Child Safety*, 241 Ariz. 576, 578, ¶ 5 (App. 2017).

### I.     Standard of Review.

**¶7** We review the court's termination order for an abuse of discretion. *Sandra R. v. Dep't of Child Safety*, 246 Ariz. 180, 182, ¶ 6 (App. 2019). We view the record in the light most favorable to affirming the court's findings. *Alma S. v. Dep't of Child Safety*, 245 Ariz. 146, 152, ¶ 21 (2018). "Because the juvenile court is in the best position to weigh evidence and assess witness credibility, we accept the juvenile court's findings of fact if reasonable evidence and inferences support them, and [we] will affirm a [termination] order unless it is clearly erroneous." *Demetrius L. v. Joshlynn F.*, 239 Ariz. 1, 3, ¶ 9 (2016).

### II.     The Superior Court Did Not Abuse Its Discretion by Finding DCS Proved the Mental-Illness Ground for Termination.

**¶8** Mother argues the superior court abused its discretion by finding the mental-illness ground because: (1) the record did not support a finding that Mother's mental illness prevented her from discharging parental responsibilities; and (2) DCS did not provide sufficient reunification services.

#### A.     Sufficient evidence showed Mother was unable to parent.

**¶9** Mother argues the evidence presented by her counselor, Mr. Hoversten, showed that Mother could parent the Children and that her illness would not last for a prolonged, indeterminate period.

**¶10** Before terminating a parent-child relationship, the superior court must first find by clear and convincing evidence that a statutory ground for termination exists. *Alma S.*, 245 Ariz. at 149, ¶ 8; *see* A.R.S. § 8-

533(B). One of these grounds is "[t]hat the parent is unable to discharge parental responsibilities because of mental illness, [or] mental deficiency . . . and there are reasonable grounds to believe that the condition will continue for a prolonged indeterminate period." A.R.S. § 8-533(B)(3). Termination under this section does not "require that the parent be found unable to discharge *any* parental responsibilities but rather that the parent be unable to discharge 'the parental responsibilities.'" *Raymond F. v. Ariz. Dep't of Econ. Sec.*, 224 Ariz. 373, 378, ¶ 19 (App. 2010) (quotation omitted). "Parental responsibilities" refers to "those duties or obligations which a parent has with regard to his [or her] child." *Id.* at ¶ 20. The term "is not intended to encompass any exclusive set of factors but rather to establish a standard which permits a trial judge flexibility in considering the unique circumstances of each termination case." *Id.* (quotation omitted). It includes the ability to make appropriate decisions for the Children, protect them from harm or abuse, and seek medical care. *See id.* at ¶¶ 21-22.

¶11 The record contains sufficient evidence that Mother was unable to parent, notwithstanding Mother's emphasis on other evidence she views as more favorable, including the opinion of her counselor that she was stable and not a danger to the Children. *See Joelle M. v. Dep't of Child Safety*, 245 Ariz. 525, 528, ¶ 18 (App. 2018) ("We defer to the superior court, which heard and weighed the evidence, observed the parties and witnesses, gauged credibility and resolved questions of fact."). Dr. Silberman, a psychologist who performed an evaluation of Mother in June 2018, reported that Mother had a delusional disorder and possibly bipolar disorder and that Mother minimized or denied her problems. He testified that this put the Children at risk, and he gave Mother a poor prognosis of successful parenting going forward. Further, he testified that Mother had a "lifelong pattern . . . or at least for several years" of this behavior, and that this pattern led him to believe that it was a condition that could continue for a prolonged or indeterminate time. He also said there was a "great deal of concern" that the Children would be at risk in Mother's care "[b]ecause she has no insight" into her condition, and that "[f]or any change to take place, she would have to be compliant with medication for a full year." He and Mother's counselor at the time of the hearing noted that Mother had not been compliant with her prescribed medication regimen and had stopped taking her medication entirely.

¶12 The first DCS caseworker assigned to Mother testified that Mother had ongoing behavioral health concerns that "absolutely" posed a safety risk to the Children if she discontinued services. The second DCS caseworker assigned to Mother raised concerns about Mother's ability to discharge her parental responsibilities due to her unmanaged mental health

issues and erratic behavior. In light of this evidence, the superior court did not abuse its discretion by finding Mother was unable to parent.

## B. DCS provided sufficient reunification services.

**¶13** Mother argues DCS failed to: (1) provide Mother with Ph.D-level counseling as recommended by her first and second psychological evaluations; (2) coordinate services and communicate or work with Mother's providers; and (3) review Mother's mental health records.

**¶14** To terminate based on A.R.S. § 8-533(B)(3), DCS must prove it provided the parent "with the time and opportunity to participate in programs designed to help her become an effective parent." *Christina G. v. Ariz. Dep't of Econ. Sec.*, 227 Ariz. 231, 235, ¶ 14 (App. 2011) (quotation omitted). DCS need not provide services that are futile; it need only "undertake measures with a reasonable prospect of success." *Id.* at ¶ 15 (quotation omitted). DCS is not required to provide duplicate services that the parent receives elsewhere. *See Pima Cty. Severance Action No. S-2397*, 161 Ariz. 574, 577 (App. 1989).

**¶15** DCS provided sufficient reunification services. During the second dependency, DCS offered twice-weekly visitation and a psychological evaluation, and Mother was engaging with her own counselor. Although Mother is correct that two of her psychological evaluations recommended Ph.D-level counseling, Mother said she preferred to see her own counselor rather than going through DCS-appointed treatment. Additionally, Dr. Silberman, a psychologist who examined Mother in June 2018, testified that Mother's medically-trained counselor at the time of the hearing was sufficient to meet Mother's needs. Mother's counselor also stated he did not know how the treatment he was providing would differ from Ph.D-level counseling.

**¶16** Additionally, Dr. Silberman said he believed that Mother was receiving the necessary services. His only recommendation was that Mother stop her use of medical marijuana and be compliant with her medication. Mother's counselor testified that DCS could "[p]robably not" have prevented Mother's 2018 commitment for mental illness. Additionally, he stated he had not referred Mother for another psychiatric evaluation because she had already had two and was receiving medication. DCS is not required to provide every available service; it must only "undertake measures with a reasonable prospect of success," and it need not duplicate the services that Mother was receiving elsewhere. *No. S-2397*, 161 Ariz. at 577.

¶17 Finally, the record does not support that DCS failed to communicate with Mother's service providers and to review her mental health records. Although DCS did not communicate with Mother's counselor, it referred Mother to Dr. Silberman and educated him about Mother's mental health issues. The superior court did not abuse its discretion by finding DCS had provided sufficient reunification services.

**III. The Court Did Not Abuse Its Discretion by Finding Termination Was in the Children's Best Interests.**

¶18 Mother argues the superior court abused its discretion by finding termination was in the Children's best interests. She asserts: (1) the Children should have been given an opportunity to have a relationship with Mother, Mother has participated in services, and the Children share a bond with Mother; (2) the superior court did not adequately address whether maintaining the parent-child relationship would be detrimental to the Children; and (3) the court failed to consider the circumstances that existed at the termination hearing rather than at Mother's prior dependencies.

¶19 Termination is in the Children's best interests if either: (1) the child will benefit from termination; or (2) the child will be harmed if termination is denied. *Alma S.*, 245 Ariz. at 150, ¶ 13. "Courts must consider the totality of the circumstances existing at the time of the [termination] determination." *Id.* "When a current placement meets the child's needs and the child's prospective adoption is otherwise legally possible and likely, a juvenile court may find that termination of parental rights, so as to permit adoption, is in the child's best interests." *Id.* at ¶ 14 (quotation omitted). A bond between the parent and child is but one of several factors to consider during the best-interests analysis. *See Crystal E.*, 241 Ariz. at 578-79, ¶¶ 9-10. We presume the superior court considered the evidence before it, even if not specifically referenced in its findings. *Fuentes v. Fuentes*, 209 Ariz. 51, 55-56, ¶ 18 (App. 2004).

¶20 Sufficient evidence supports the court's best-interests finding despite the bond between Mother and the Children. The second DCS case manager testified that termination would provide the Children with stability and the chance to be adopted, while meeting their emotional, educational, and medical needs. At the time of the dependency/termination hearing, the Children were in an adoptive home that was meeting their needs. Furthermore, the DCS caseworker from the second dependency testified that if the current placement were to "disrupt," the Children would remain adoptable. Finally, this caseworker

opined that the Children would suffer a detriment if termination were denied because of Mother's mental instability, multiple involuntary commitments, and erratic behavior. There is no evidence that this caseworker was referring to any circumstances other than those existing at the time of the dependency/termination hearing, as Mother alleges. In light of this evidence, the superior court did not abuse its discretion by finding termination was in the Children's best interests.

## CONCLUSION

¶21 The superior court's order terminating Mother's parental rights to the Children is affirmed.



AMY M. WOOD • Clerk of the Court
FILED: AA