256 P.3d 628

**CHRISTINA G., Appellant,**

v.

**ARIZONA DEPARTMENT OF ECONOMIC SECURITY, H.G., Appellees.**

No. 1 CA–JV 10–0143.

Court of Appeals of Arizona, Division 1, Department B.

May 10, 2011.

The Stavris Law Firm, PLLC By Alison Stavris, Scottsdale, Attorney for Appellant.

Thomas C. Horne, Arizona Attorney General By Michael F. Valenzuela, Assistant Attorney General, Phoenix, Attorneys for Appellee Arizona Department of Economic Security.

BROWN, Judge.

¶ 1 Christina G. ("Mother") appeals from the juvenile court's order terminating her parental rights to her son ("the child").[1] For the following reasons, we affirm.

## BACKGROUND

¶ 2 Mother, age sixteen at the time, gave birth to the child in August 2007.[2] They lived together in a group home licensed by the Arizona Department of Economic Security ("ADES"). In November, Child Protective Services ("CPS") received a report that Mother was "observed or overheard repeatedly striking [the child] or treating him in a rough manner." A week later, it was reported that Mother was sitting on the floor and dropped the child a "couple of inches" such that his head and body struck the floor. On another occasion, Mother hit the child on the head with a plastic hanger. No injuries were reported from any of these incidents.

¶ 3 In March 2008, Mother failed to properly strap the child in his stroller and he fell, suffering a bloody nose. Since Mother was close to a hospital, she took him in for an examination. He was treated for the nosebleed and minor scrapes and then sent home with Mother. On another occasion Mother placed the child in a crib with a broken rail; he fell but was not injured. Mother had reported the broken rail to staff the day before but it was not repaired until after the child fell.

¶ 4 In October 2008, Mother was observed "yelling and screaming" at the child after she became upset because she wanted to make

---

1. On the court's own motion, it is hereby ordered amending the caption for this appeal as reflected in this decision. The above referenced caption shall be used on all documents filed in this appeal.

2. The parental rights of the child's father were also terminated, but are not subject to this appeal.

more than one phone call, in violation of her group home restrictions. She threw the phone at staff members and the child "was observed to be afraid and huddled in a little ball in his crib." Staff at the group home indicated their concern that they would not be able to ensure the child's safety. The child was taken into the temporary physical custody of CPS in December 2008.

¶5 ADES filed a dependency petition, alleging that the child was dependent as to Mother based on her mental deficiencies and physical abuse of the child. Mother initially contested the allegations, but later submitted the issue of dependency to the juvenile court, which granted the petition. The court confirmed the case plan of family reunification and ordered the following: "parent aide services, psychological evaluation with follow-up recommendations, Healthy Families, and transportation in addition to the services Mother already receives through her [own] dependency as a child." In a subsequent mediation agreement and order, additional services listed for Mother were independent living skills training, placement in a teen-mother group home, referrals to obtain updated mental health records, and continuing to work with Touchstone to meet Mother's mental health needs.

¶6 Mother completed a psychological evaluation with Dr. James Thal on March 16, 2009. Thal administered two academic assessment tests, and supplemented his findings with prior educational testing reports from 2007. Thal also tested Mother for depression and adaptive skills. He opined that Mother suffered from mild retardation and a mood disorder, not otherwise specified. He believed that these conditions would exist for a prolonged, indeterminate period, that a child in her care would be at risk for neglect and abuse, and that in his opinion "there are no services that could improve [Mother's] condition to the point that it would be reasonable to expect that a child would be safe in her care." He stated further that severance and adoption would be the most appropriate case plan.[3]

¶7 Notwithstanding Thal's report, ADES continued to offer services to Mother, including parent aide training, transportation, independent living skills, placement in a teen group home, and counseling. For the most part, Mother participated in the services offered until she turned eighteen in August 2009. At that time, ADES gave her the opportunity to remain in foster care through a voluntary agreement, but Mother declined. She then moved out of the group home and returned to live with her mother, even though she had concerns that her mother might be "using drugs again in the home" along with concerns of domestic violence. According to ADES, if Mother had accepted the agreement, she would have been able to continue to receive services similar to those she had received as a dependent child, including stable housing.

¶8 ADES requested a permanency planning hearing in June 2009, but then recommended that the hearing be postponed because the child was not currently in an adoptive placement and the child's father had not been evaluated as a placement option. In its July 2009 report, the Foster Care Review Board stated it was "concerned that [Mother] will not be able to care for [the child]" and noted that her "psychological evaluation did not recommend a case plan goal of family reunification." The Board further indicated that it supported the case manager's intent to continue family reunification for the biological father but that it supported implementing the "concurrent case plan goal of adoption."

¶9 A short time later, Mother was advised that she needed to contact Magellan, the regional behavioral health authority for Maricopa County, to set up an intake appointment that would allow Magellan to assist with her mental health needs. Mother made appointments, the first of which was set for November 16, 2009, but she failed to keep "two or three" appointments. Both the caseworker and the independent living skills supervisor testified that they reminded Mother of the need to attend the appointments and the

---

3. Thal nonetheless recommended that Mother participate in several services, including "DDD services," continued psychiatric services, and job training. He also noted that placement in a group home after her 18th birthday would "likely be crucial" for Mother.

caseworker offered her transportation if Mother would let her know beforehand that she needed it.

¶ 10 In October 2009, ADES recommended a change in the case plan to severance and adoption, informing the court that Mother chose not to accept continued foster care services for herself and had decided to reside with her mother. ADES noted that placement in that home would not be appropriate because of issues that were unresolved in Mother's own dependency, including her mother's substance abuse. ADES also believed that pursuing reunification with the biological father was not a viable option. The court approved changing the case plan to severance and adoption, and ADES moved to terminate Mother's parental rights, alleging mental illness and mental deficiency as the grounds for severance under Arizona Revised Statutes ("A.R.S.") section 8–533(B)(3) (Supp. 2010).[4] In March 2010, ADES submitted an amended motion alleging two additional grounds based on the child's out-of-home placement for greater than nine months and fifteen months, respectively, pursuant to A.R.S. § 8–533(B)(8)(a) and (c).

¶ 11 Mother's contested severance hearing was held in June 2010. At the outset, ADES withdrew its request for termination under A.R.S. § 8–533(B)(8)(a) (nine months time in care). After taking the matter under advisement, the juvenile court granted the motion, finding that ADES had proven all three statutory grounds by clear and convincing evidence. The court also determined that ADES had proven by clear and convincing evidence that "given Mother's condition, it would be futile to continue to offer rehabilita-

tive services to Mother to promote reunification," and that even if it were not futile, ADES had made diligent efforts to provide appropriate services for the Mother and the child. Mother timely appealed.

## DISCUSSION

¶ 12 To justify termination of Mother's parental rights, the juvenile court was required to find the existence of at least one statutory ground by clear and convincing evidence.[5] *Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 249, ¶ 12, 995 P.2d 682, 685 (2000). The court must also find by a preponderance of the evidence that termination is in the best interests of the child. *Kent K. v. Bobby M.*, 210 Ariz. 279, 284, ¶ 22, 110 P.3d 1013, 1018 (2005).

¶ 13 We view the evidence in a severance case in the light most favorable to sustaining the juvenile court's findings. *Ariz. Dep't of Econ. Sec. v. Matthew L.*, 223 Ariz. 547, 549, ¶ 7, 225 P.3d 604, 606 (App. 2010). The juvenile court is in the best position to weigh the evidence, observe the parties, judge the credibility of witnesses, and make appropriate findings. *Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 280, ¶ 4, 53 P.3d 203, 205 (App.2002). We accept the juvenile court's findings of fact unless no reasonable evidence supports them. *Id.*

### I. Reasonable Efforts

¶ 14 Mother argues that the juvenile court erred in finding that ADES made reasonable efforts to provide appropriate services to Mother to allow reunification.[6] "It is

---

4. We cite the most current version of the applicable statutes when they have not been substantively revised since the date of the underlying conduct.

5. Under A.R.S. § 8–533(B)(8)(c), the juvenile court may properly sever a parent's rights if: (1) the child has been in out-of-home placement for fifteen months or longer; (2) the parent has been unable to remedy the circumstances causing the child to be in out-of-home placement; and (3) a substantial likelihood exists that the parent would not be able to properly care for the child in the near future. To justify severance under A.R.S. § 8–533(B)(3), the court must find that: (1) the parent is unable to discharge parental responsibilities; (2) because of mental illness or

deficiency; and (3) there are reasonable grounds to believe the condition will continue for a prolonged indeterminate period.

6. Mother does not challenge the juvenile court's determination that ADES proved all three statutory grounds by clear and convincing evidence. Although she made a general argument in her opening brief that the court erred in terminating based on fifteen months' time-in-care, she does not develop the argument and has therefore waived it. *State v. Moody*, 208 Ariz. 424, 452 n. 9, ¶ 101, 94 P.3d 1119, 1147 n. 9 (2004) (failure to develop argument usually results in abandonment and waiver of issue). Additionally, at oral argument before this court, her counsel clarified

well established that [ADES], before acting to terminate parental rights, has an affirmative duty to make all reasonable efforts to preserve the family relationship." *Mary Ellen C. v. Ariz. Dep't of Econ. Sec.,* 193 Ariz. 185, 186, ¶ 1, 971 P.2d 1046, 1047 (App.1999). This means that ADES must provide services to the parent "with the time and opportunity to participate in programs designed to help her to become an effective parent." *In re Maricopa Cnty. Juv. Action No. JS–501904,* 180 Ariz. 348, 353, 884 P.2d 234, 239 (App.1994). The juvenile court is to consider the availability of reunification services to the parent and his or her participation in those services, and must find that ADES made a diligent effort to provide such services. A.R.S. § 8–533(B)(8), (D).

¶ 15 ADES is not required, however, "to provide every conceivable service or to ensure that a parent participates in each service it offers." *Maricopa Cnty. Juv. Action No. JS–501904,* 180 Ariz. at 353, 884 P.2d at 239. It is not required to provide services that are futile, *Mary Lou C. v. Ariz. Dep't of Econ. Sec.,* 207 Ariz. 43, 50, ¶ 18, 83 P.3d 43, 50 (App.2004), and need only "undertake measures with a reasonable prospect of success." *Mary Ellen C.,* 193 Ariz. at 192, ¶ 34, 971 P.2d at 1053. Assuming, without

deciding, that ADES failed to make diligent efforts to provide sufficient reunification services,[7] we conclude that the record supports the juvenile court's determination that continuation of services would have been futile.[8]

## II. Futility

¶ 16 At the severance hearing, Thal's testimony was consistent with his written report. He explained that he had diagnosed Mother with an unspecified mood disorder based on reviewing previous test results, descriptions from the group home, and other settings, but he stopped short of diagnosing Mother as bipolar.[9] He also diagnosed mild mental retardation based on Mother's living skills, IQ scores, and adaptation to environments. In response to a question as to why he had previously opined that there were no services that could improve Mother's condition, Thal responded:

> This was in regard to whether or not she could—services [sic] in pursuit of improving her status to where she could be a minimally effective parent, and my opinion was that that couldn't happen, and services would not accomplish that, not in any reasonable or realistic sense, and I felt that because of her—the [sic] deficits, the deficiencies she has intellectually and emotion-

that the focus of Mother's appeal is her contention that the court erred in finding that ADES made reasonable efforts.

7. The record makes it difficult to evaluate the services offered to Mother, particularly given her status as a dependent child herself. Throughout the case, reports and testimony by representatives of ADES referred to services Mother had received through her dependency, but the specifics of such services are not in the record. Instead, the record contains only general references to those services. For example, the CPS review reports indicated that Mother was given weekly parenting classes through the Rehoboth Life Skills program while she lived in the group home and that she received services from Healthy Families. No other information was provided; therefore, we cannot tell when these services were given, how often Mother participated, or whether Mother benefitted from her participation in these programs.

8. Mother may have waived her right to challenge ADES's failure to make diligent efforts. Neither her guardian ad litem nor her attorney requested additional services or raised an objection to the

manner in which the court-ordered services were being provided, despite multiple opportunities to do so at various stages of the proceedings. On numerous occasions, the court entered explicit findings that ADES was making reasonable efforts, with no objection from Mother to those findings. Indeed, Mother agreed to the services ordered by the court at the outset of the dependency and through the mediation agreement. She also had the option of requesting an evidentiary hearing on any matter relating to these proceedings, including services, but did not invoke that right. *See* Ariz. R.P. Juv. Ct. 58(D) ("Any party seeking an evidentiary hearing on any issue shall file a motion requesting that the matter be set for a contested hearing."). Because ADES does not argue Mother waived her right to raise this issue on appeal, we decline to affirm based on waiver.

9. Several ADES reports, as well as the juvenile court's severance order, indicate that Thal diagnosed Mother as bipolar, but his diagnosis was a recommendation that further testing be employed to "rule-out" bipolar disorder. At the severance hearing, Thal testified that he was not diagnosing Mother as bipolar.

ally. And that's against a backdrop of very little support. Unfortunately this is not a young person that has capable and competent family members lined up behind her to help.

¶ 17 Thal opined further that the child would be at risk under Mother's care because of her intellectual limitations, noting that "learning and forgetting are going to be the major obstacles for her." He testified that even if Mother's mood disorder was treated with medication, and she was participating in counseling, he would still have concerns about her ability to parent because the mental deficiency would not go away. Ultimately, Dr. Thal stated that it was "highly unlikely that [Mother] could function autonomously and independently as a full time caregiver to a young child" and he did not believe that she would ever be able to do so.

¶ 18 On cross-examination, Thal acknowledged that some people with mental retardation and a diagnosis similar to Mother's "are able to effectively parent their child" and that certain services such as job training and individual therapy would help under those circumstances. Thal further testified that Mother's ability to function and adapt might be improved, and that she would be able to learn better through some means rather than others. Thal also acknowledged that Mother may be capable of assisting someone to parent. However, he did not believe "those efforts would result in her being a capable and competent parent in the foreseeable future, but at least in theory there are things that certainly would help."

¶ 19 Thal also recognized that his evaluation of Mother had occurred fifteen months prior to the severance hearing, and that it "might have been helpful" to have re-evaluated Mother near the time of the hearing to assess whether the services provided actually addressed his concerns. He added: "I would have been happy to try to look at that. I mean, I think it's pretty obvious from the reports. This is an awfully pessimistic report."

¶ 20 Viewing the evidence in a light most favorable to sustaining the juvenile court, we conclude that the record supports the court's finding that continuation of reunification efforts would have been futile. *See Vanessa H. v. Ariz. Dep't of Econ. Sec.*, 215 Ariz. 252, 256, ¶ 20, 159 P.3d 562, 566 (App.2007) (finding that reunification services on behalf of the mother would have been futile based on "abundant evidence showing that no amount of 'reasonable efforts' in providing services would have enabled [her] to function as a minimally adequate parent"); *Pima Cnty. Severance Action No. S–2397*, 161 Ariz. 574, 577, 780 P.2d 407, 410 (App.1989) (severance on grounds of mental illness upheld where evidence established "that no other services could be offered that had not already been offered that might preserve the family"); *In re Maricopa Cnty. Juv. Action No. JS–5209 & No. JS–4963*, 143 Ariz. 178, 189, 692 P.2d 1027, 1038 (App.1984) (recognizing the duty of ADES to attempt to preserve the family does not go so far as to "require it to undertake efforts which are futile").

¶ 21 In supplemental briefing,[10] Mother contends that ADES was required to obtain an order from the juvenile court before determining not to provide her with the services Thal recommended. We agree that the authorities cited by Mother bear on the issue of whether ADES may cease or decline services based on the ground of futility, *see* A.R.S. § 8–846 and Rule 57, but we disagree that Mother is entitled to reversal of the juvenile court's severance order on this basis.

¶ 22 Section 8–846 provides in pertinent part as follows:

A. Except as provided in subsections B and C and D of this section, *if the child has been removed from the home,* the court shall order the department to make reasonable efforts to provide services to the child and the child's parent.

B. *The court shall consider* the following factors and reunification services are not

---

**10.** On the court's own motion, we ordered oral argument and listed a number of questions the parties should be prepared to address, including the applicability of A.R.S. § 8–846 (Supp.2010)

and Arizona Rule of Juvenile Procedure ("Rule") 57. We then granted ADES' request to allow both parties to provide supplemental briefing.

required to be provided *if the court finds* by clear and convincing evidence that:

1. One or more of the following aggravating circumstances exist:

. . .

(b) The parent or guardian is suffering from a mental illness or mental deficiency of such magnitude that it renders the parent or guardian incapable of benefitting from the reunification services. This finding shall be based on competent evidence from a psychologist or physician that establishes that, even with the provision of reunification services, the parent or guardian is unlikely to be capable of adequately caring for the child within *twelve months* after the date of the child's removal from the home.

A.R.S. § 8–846(A), (B)(1)(b) (emphasis added).

¶ 23 Rule 57 imposes similar obligations on ADES and the juvenile court:

**A. Purpose.** Services to the child and the parent designed to facilitate the reunification of the family are not required if the court, after hearing, finds the existence of certain aggravating circumstances, as set forth by law.

**B. Procedure.** The court shall hear evidence concerning whether reunification services are required and may consider evidence as set forth in Rule 56(D).

**C. Findings and Orders.** All findings shall be in writing, in the form of a minute entry or order. If the court finds, by clear and convincing evidence, that reunification efforts are not required, the court shall:

1. Set forth the specific factual basis for its findings;

2. Order an appropriate case plan into effect and enter orders as necessary to achieve the case plan;

3. Enter orders concerning the placement and custody of the child;

4. Set a permanency hearing, as required by law[.]

Ariz. R.P. Juv. Ct. 57. Because Mother did not ask the juvenile court to conduct a hearing to determine whether ADES could suspend services or refrain from providing them, she has waived the argument absent fundamental error. *See Monica C. v. Ariz. Dep't of Econ. Sec.*, 211 Ariz. 89, 94, ¶ 22–23, 118 P.3d 37, 42 (App.2005).

¶ 24 We find no error, much less fundamental error. Although ADES did not provide all of the services that Mother now contends should have been given, it is undisputed that ADES provided at least some services to Mother throughout the dependency and the termination proceedings. The juvenile court recognized as much each time it made a finding that ADES had made diligent efforts to provide reunification services.

¶ 25 We recognize, based on the plain language of § 8–846 and Rule 57, that in cases to which those provisions apply, ADES should not suspend services or refrain from offering them before the court changes the case plan to severance and adoption. In our view, the purpose behind these two provisions is to encourage ADES to seek a determination on futility when it appears that reunification services will no longer assist the parent. *See Mary Ellen C.*, 193 Ariz. at 191, ¶ 31, 971 P.2d at 1052 (noting that services must be provided *before* ADES seeks to terminate the parent-child relationship on mental illness grounds). Thus, when applicable under § 8–846, if ADES intends to stop providing reunification services, it is then obligated to bring the issue to the attention of the juvenile court to permit the parents to be heard on the matter. But nothing in the statute or rule requires ADES to request such a hearing if it intends to continue to provide services, as was the case here. Nor does any language in § 8–846 or Rule 57 suggest that the juvenile court is prohibited from making a determination after the severance hearing that additional services would have been futile.

### III. Best Interests

¶ 26 Mother also argues that the juvenile court erred in concluding severance was in the child's best interests. To establish that severance of a parent's rights would be in a child's best interests, "the court must find either that the child will benefit from termination of the relationship or that the child would be harmed by continuation of the

relationship." *James S. v. Ariz. Dep't of Econ. Sec.*, 193 Ariz. 351, 356, ¶ 18, 972 P.2d 684, 689 (App.1998). In making the determination, the juvenile court may consider evidence that the child is adoptable or that an existing placement is meeting the needs of the child. *Mary Lou C.*, 207 Ariz. at 50, ¶ 19, 83 P.3d at 50.

¶ 27 Mother acknowledges that the child's needs are being met by the out-of-home placement, but asserts generally that termination of her rights "may pose a long term psychological effect on the child." The record reflects otherwise. At the time of the severance hearing, the child had been living in foster care for eighteen months. A case manager testified that severance would offer the child a stable environment and the child's current placement was willing to adopt. ADES also presented evidence of potential harm to the child if Mother's parental rights were not terminated. Thal opined that in that event, the child would be at risk for physical and emotional abuse. He testified that Mother's mental condition would affect her ability to parent the child, not in an emotional sense, but in a "wide ranging number of activities where parents have to remember, learn, think, and problem solve." He then noted his concerns about Mother's ability to provide "daily care" such as properly administering medicine, reading a thermometer, understanding good nutrition, and helping to stimulate the child to help him learn and develop language skills. He also explained that if Mother declined to take her prescribed medicine,[11] she would be at risk for "episodes of dyscontrol, in a nutshell losing it, perhaps manifested in yelling or screaming at a child, perhaps physically assaulting or abusing a child in the worst case scenario, because the problem would be she would be overwhelmed or exceeded emotionally." We conclude that the court did not err in finding that severance would be in the child's best interests.

### CONCLUSION

¶ 28 Based on the foregoing, we affirm the juvenile court's order terminating Mother's parental rights.

11. Mother testified that she was not currently taking medication and did not believe it was

necessary.