NOTICE: NOT FOR PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION DOES NOT CREATE
LEGAL PRECEDENT AND MAY NOT BE CITED EXCEPT AS AUTHORIZED.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

TIFFANY F., *Appellant,*

*v.*

DEPARTMENT OF CHILD SAFETY[1], G.F., *Appellees.*

No. 1 CA-JV 14-0137
FILED 09-25-2014

Appeal from the Superior Court in Maricopa County
No.  JD21136
The Honorable Joan M. Sinclair, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Tucson
By Cathleen E. Fuller
*Counsel for Appellee Department of Child Safety*

Maricopa County Public Advocate, Mesa
By Suzanne W. Sanchez
*Counsel for Appellant*

---

[1]     Pursuant to S.B. 1001, Section 157, 51st Leg., 2nd Spec. Sess. (Ariz. 2014) (enacted), the Department of Child Safety is substituted for the Arizona Department of Economic Security in this matter.  *See* ARCAP 27.

---

**MEMORANDUM DECISION**

Judge Andrew W. Gould delivered the decision of the Court, in which Presiding Judge Margaret H. Downie and Judge Samuel A. Thumma joined.

---

**G O U L D**, Judge:

¶1 Tiffany F. ("Mother") appeals the termination of her parental rights to her son, G.F. ("Child"). She claims the Department of Child Safety ("DCS") did not prove the statutory ground for severance and that severance was not in Child's best interests. For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2 Child was born on May 19, 2010. In August 2011, the Child Abuse hotline received a report that Child was being neglected by Mother. The report stated that Child was not being adequately fed by Mother, that Mother had let her health insurance for Child lapse, and that Mother consistently passed care of Child onto her relatives. Another report in November 2011 stated that Mother had left Child with her relatives for an extended period of time without providing them insurance information or financial support for Child.

¶3 In December 2011, DCS filed a dependency petition alleging Mother neglected Child by leaving him in the care of relatives for extended periods of time; Mother did not provide for Child's basic needs, including health needs, or provide appropriate supervision. The juvenile court declared Child a temporary ward of the court, and DCS placed him with the same relatives who had been caring for him. Mother denied the allegations in the dependency petition, but submitted the dependency to the court on the petition. The juvenile court found Child dependent, set the case plan to be family reunification, and ordered that Child remain placed with Mother's relatives.

¶4 DCS then provided Mother various services, including a home assessment, a parent aide, counseling, a psychological evaluation, a psychiatric evaluation, family reunification teams, supervised visitation, and a case aide. Mother participated in the services provided by DCS and

progressed to the point where DCS attempted reunification with Child twice; however, both reunification attempts failed. In the first attempt, Mother was reunified with Child while living with a relative who was approved by DCS to be a safety monitor. However, because, among other things, Mother neglected caring for Child, she was asked to leave the residence. As a result, Child was again placed with Mother's relatives in an out-of-home placement. A little over a year later, Mother was living in approved housing and was reunited with Child. However, shortly after Child was placed with Mother, Mother and Child moved out of that home without informing DCS of the move or of where they would move to. Upon discovering Mother's new residence, DCS found Child and the home to be in disarray; Child was again removed from Mother's care.

¶5        In October 2013, DCS moved to terminate Mother's parental rights to Child. As relevant to this appeal, the petition alleged that Child was in an out-of-home placement for more than fifteen months and Mother had been unable to remedy the circumstances.

¶6        Following the contested severance hearing, the juvenile court found that DCS proved this ground for severance. The juvenile court found that Child was initially removed from Mother's care due to Mother's unstable housing, lack of employment, and poor decision-making relative to Child. The court found that Mother did not keep a stable job for a full six month period and that she had not demonstrated any housing stability during the dependency. Because Mother continued to have housing and employment instability and to exhibit poor decision-making concerning Child despite the services provided by DCS, the juvenile court found it substantially likely Mother would be unable to effectively parent Child in the near future. The juvenile court also found that severance was in Child's best interests because the current placement was providing for his needs and it would give Child the opportunity to have a stable, permanent home. Accordingly, the juvenile court granted the severance of Mother's parental rights and Mother timely appealed.

**DISCUSSION**

I.        Standard of review

¶7        "[W]e view the evidence and reasonable inferences to be drawn from it in the light most favorable to sustaining the court's decision." *Jordan C. v. Ariz. Dep't of Econ. Sec.*, 223 Ariz. 86, 93, ¶ 18, 219 P.3d 296, 303 (App. 2009). The juvenile court "is in the best position to weigh the evidence, observe the parties, judge the credibility of witnesses, and resolve

disputed facts." *Jordan C.*, 223 Ariz. at 93, ¶ 18, 219 P.3d at 303 *(quoting Ariz. Dep't of Econ. Sec. v. Oscar O.*, 209 Ariz. 332, 334, ¶ 4, 100 P.3d 943, 945 (App. 2004).  Thus, we "accept the juvenile court's findings of fact unless no reasonable evidence supports them." *Christina G. v. Ariz. Dep't of Econ. Sec.*, 227 Ariz. 231, 234, ¶ 12, 256 P.3d 628, 631 (App. 2011).

II.     Statutory Grounds for Severance

**¶8**         DCS moved to terminate Mother's parental rights under Arizona Revised Statutes ("A.R.S.") section 8-533(B)(8)(c).  DCS alleged that Child was in an out-of-home placement for a cumulative total period of fifteen months or longer, that despite diligent efforts to provide appropriate reunification services Mother was unable to remedy the circumstances that caused Child to be removed from Mother's care, and that there is a substantial likelihood that Mother would not be capable of exercising proper and effective parental care and control in the near future.

**¶9**         To justify severance of Mother's parental rights, the juvenile court is required to find that DCS proved the alleged statutory ground by clear and convincing evidence.  *Christina G.* 227 Ariz. at 234, ¶ 12, 256 P.3d at 631.  As relevant here, in deciding whether DCS sustained its burden, the juvenile court is also required to "consider the availability of reunification services to the parent and the participation of the parent in these services." *Jordan C.*, 223 Ariz. at 93, ¶ 17, 219 P.3d at 303.  For this severance ground, DCS must provide a parent with "the time and opportunity to participate in programs designed to improve the parent's ability to care for the child" that have "a reasonable prospect of success."  *Id.* at 94, ¶ 20, 219 P.3d at 304.

**¶10**        Child was removed from Mother's care because Mother did not have stable housing, Mother was unemployed, and Child was not receiving proper medical care.  DCS had received reports that Mother neglected Child and that he exhibited signs of having gone hungry for periods of time.  Mother also failed to use a custom helmet provided by Child's pediatrician to correct Child's head shape, thereby causing the condition to be permanent.  When DCS became involved, Mother was homeless and had left Child with her relatives for an extended period of time without providing financial support or a means for them to obtain any needed medical attention for Child.

**¶11**        DCS made diligent efforts to provide Mother appropriate services during the nearly two-and-a-half year dependency.  She was given a home assessment, she participated in individual counseling, she was provided supervised visitation, she was provided a parent aide, she

underwent a psychological and psychiatric evaluation, she was assisted by two family reunification teams, and she had a case aide. Mother participated in all the services to the point of Child being reunified with Mother on two separate occasions during the dependency. However, Mother did not implement what she was learning and her continued unstable housing resulted in Child being removed shortly after each reunification.

¶12 Clear and convincing evidence supports the juvenile court's conclusion that Mother was unable to remedy the circumstances that caused Child's out-of-home placement and that it was substantially likely she would not be capable of exercising proper and effective parental care and control in the near future. Despite participating in services, Mother continued to exhibit poor judgment with respect to Child and never secured stable employment during the course of the dependency. At one point, when Mother lost her job, she opted to pursue unemployment benefits rather than secure another job. She was employed at the time of the severance trial; however, that job was scheduled to end the day after the proceedings and she had made no arrangements for employment thereafter. Apart from a few items of clothing, Mother did not provide financial support for Child during the dependency.

¶13 Additionally, Mother was unable to secure stable housing throughout the dependency. Repeatedly, Mother voluntarily left or was asked to move out of her approved housing. The case manager testified that she was concerned Mother did not have a stable place to stay and that Mother did not appreciate the need to place Child's needs above her own. When Mother lost her approved housing, rather than return Child to the approved placement with relatives, Mother brought him to live with her in an unapproved home that resulted in Child being removed from her custody.

¶14 Mother's conduct throughout the dependency indicated that the services were not producing necessary behavioral changes. Mother's conduct during visitation indicated that she was not giving proper consideration to Child's needs. Multiple times, Mother brought other children to her visitation with Child; one time, the child she brought with her had lice.

III. Best Interests

¶15 In addition to finding DCS has proved a statutory ground for severance, "[t]he court must also find by a preponderance of the evidence

that termination is in the best interest of the child." *Christina G.*, 227 Ariz. at 234, ¶ 12, 256 P.3d at 631. "To establish that severance of a parent's rights would be in a child's best interests, 'the court must find either that the child will benefit from termination of the relationship or that the child would be harmed by continuation of the relationship.'" Id. at 237-38 ¶ 26, 256 P.3d at 634-35.

¶16      The record supports the juvenile court's determination that severance is in Child's best interests. Child needs permanency. He has been in an out-of-home placement for the majority of his life. Child's life has been repeatedly disrupted by DCS's attempts to reunify him with Mother during the dependency. Additionally, Child is adoptable and is currently placed with relatives in an adoptive home; severance of Mother's rights would provide him stability.

## CONCLUSION

¶17      For the reasons above, we affirm the juvenile court's termination of Mother's parental rights to Child.



Ruth A. Willingham · Clerk of the Court
FILED: gsh