NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS

## DIVISION ONE

VINCENT S., *Appellant,*

*v.*

DEPARTMENT OF CHILD SAFETY, V.S., M.S., *Appellees.*

No. 1 CA-JV 19-0098
FILED 8-29-2019

Appeal from the Superior Court in Maricopa County
Nos. JD28014
JS19606
The Honorable Karen A. Mullins, Judge

**AFFIRMED**

COUNSEL

John L. Popilek, P.C., Scottsdale
By John L. Popilek
*Counsel for Appellant*

Arizona Attorney General's Office, Phoenix
By Doriane F. Zwillinger
*Counsel for Appellee Department of Child Safety*

------------------------

## MEMORANDUM DECISION

Judge Maria Elena Cruz delivered the decision of the Court, in which Presiding Judge Kenton D. Jones and Judge Paul J. McMurdie joined.

------------------------

**C R U Z**, Judge:

¶1           Vincent S. ("Father") appeals from the superior court's order terminating his parental rights to V.S. and M.S. (the "children").  The only issue before us is whether the court's diligent efforts finding is supported by reasonable evidence.  For the following reasons, we affirm.

### FACTS AND PROCEDURAL HISTORY

¶2           V.S. was born substance-exposed to codeine and morphine in March 2017.  Destiny P. ("Mother") admitted to using drugs up to the date of V.S.' birth.[1]  V.S. suffered from drug withdrawals and was hospitalized for two weeks; Department of Child Safety ("DCS") took custody of V.S. when he was released from the hospital.  When V.S. was born, Father was incarcerated for violating the terms of his probation on a felony drug-paraphernalia conviction.

¶3           In June 2017, when Father was released from custody, DCS provided him reunification services, including referrals to TERROS for substance-abuse evaluation and treatment, and to TASC for urinalysis testing.  DCS also offered Father counseling, transportation, parenting classes, supervised visitation, parent-aide services contingent upon Father demonstrating thirty days of sobriety, and referrals to the Cradles to Crayons and Family Treatment Court programs.  The terms of Father's probation also required his participation in substance-abuse treatment and urinalysis testing.

¶4           Father did not participate in DCS or probation services.  He also did not participate in the TERROS intake, and after Father ignored their repeated attempts to contact him, TERROS closed out the referral.  He was likewise closed out of TASC for failing to complete a single urinalysis test.  Father attended four days of inpatient medical detoxification at Community Bridges, but then withdrew and did not complete the

------------------------

[1]      Mother is not a party to this appeal.

treatment or engage in outpatient services. The superior court adjudicated V.S. dependent based upon Father's substance abuse and approved concurrent case plans of family reunification and severance and adoption.

**¶5** Father was reincarcerated from October to November 2017 for violating probation. Once he was released, DCS again referred him to TERROS. Yet Father still refused to engage in services and in November 2017, DCS moved to terminate Father's parental rights to V.S., alleging abandonment, six-months in an out-of-home placement, and chronic substance abuse.

**¶6** Father returned to Community Bridges for another inpatient medical detoxification and tested positive for opiates and methamphetamine, but only stayed for two days and did not set up follow-up treatment. DCS did not renew a TERROS referral because Father said he would seek treatment with Chicanos Por La Causa in January 2018 through his probation services, but failed to complete the program after only attending three times. Father's probation was revoked in February 2018, and he was sentenced to nine months in prison.

**¶7** M.S. was born substance-exposed to methamphetamines and heroin in February 2018. Mother admitted using these drugs two days before M.S. was born and DCS removed M.S. in March 2018. Father was incarcerated at that time.

**¶8** After Father was released from incarceration, DCS referred him to TERROS two more times, and he completed an evaluation in December 2018. Father tested positive for methamphetamine and heroin. He reported having last used the drugs the day before, and generally used heroin daily and methamphetamine every other day. Later that month, Father attended a detoxification program at Copper Springs for several days where he was diagnosed with opioid dependence. After he was discharged, Father was instructed to follow up with Copper Springs, but failed to seek outpatient treatment. Father also failed to appear for a scheduled TERROS follow-up appointment. TERROS unsuccessfully attempted to contact Father by phone and visited his home. Afterwards, DCS emailed Father twice informing him he was on the verge of being closed out by TERROS due to his lack of participation, but Father did not respond.

**¶9** DCS petitioned to terminate Father's parental rights to M.S. on the grounds of chronic substance abuse, six-months in an out-of-home placement, and abandonment.

**¶10**       In February 2019, the superior court conducted a dependency hearing for M.S. combined with a termination hearing for the children. The court received testimony from Father and a DCS child safety specialist. The court adjudicated M.S. dependent and terminated Father's parental rights to the children on the history of chronic substance abuse, Ariz. Rev. Stat. ("A.R.S.") § 8-533(B)(3), and six-months in out-of-home placement grounds, A.R.S. § 8-533(B)(8)(b), and as to V.S. on the out-of-home placement for over fifteen months, A.R.S. § 8-533(B)(8)(c).

**¶11**       Father timely appealed. We have jurisdiction pursuant to A.R.S. §§ 8-235(A), 12-120.21(A)(1) and 12-2101(A)(1).

## DISCUSSION

**¶12**       Before terminating a parent-child relationship, the superior court must find at least one statutory ground by clear and convincing evidence. *Christina G. v. Ariz. Dep't of Econ. Sec.*, 227 Ariz. 231, 234, ¶ 12 (App. 2011). As a necessary element to overcome a parent's fundamental right to custody of his or her child, the court must also find that DCS made diligent efforts to provide a parent with appropriate reunification services. *See* A.R.S. § 8-533(B)(8); *Jordan C. v. Ariz. Dep't of Econ. Sec.*, 223 Ariz. 86, 93, ¶ 19 (App. 2009); *Mary Ellen C. v. Ariz. Dep't of Econ. Sec.*, 193 Ariz. 185, 192, ¶ 32 (App. 1999). DCS is diligent in providing reunification services when it "provide[s] a parent with the time and opportunity to participate in programs designed to improve the parent's ability to care for the child." *Mary Ellen C.*, 193 Ariz. at 192, ¶ 37. But DCS is not required to provide every conceivable service, undertake futile rehabilitative measures, or ensure the parent's participation. *Id.* at 192, ¶¶ 34, 37; *Maricopa Cty. Juv. Action No. JS-501904*, 180 Ariz. 348, 353 (App. 1994). We defer to the superior court's factual findings, so long as they are supported by substantial evidence. *See Lashonda M. v. Ariz. Dep't of Econ. Sec.*, 210 Ariz. 77, 81-82, ¶¶ 13, 16 (App. 2005).

**¶13**       Father argues the superior court erred in terminating his parental rights to the children because he was not afforded enough time to participate in services. We disagree.

**¶14**       The record reflects that Father had ample time and opportunity to participate in reunification services. Father was referred to numerous services, including substance-abuse assessment and treatment, parenting classes, counseling, and was even provided transportation. These services were meant to help Father with his substance abuse and ability to provide a safe and stable home for the children. Yet over the two

years of the dependency action, Father had not meaningfully engaged in any of these services. Father argues that now the "time [is] right" because he alleges having been sober since December 2018, and having secured an apartment and full-time job. Father has not submitted to drug tests to confirm his sobriety. Moreover, these recent developments do not override Father's need to establish and maintain sobriety and learn the skills necessary to provide the children with appropriate parenting and supervision.

¶15         The superior court found that "Father has never engaged in any treatment program with TERROS" and that "Father has never drug tested as requested by DCS." Further, Father also failed to participate in treatment required by probation. The superior court found "he repeatedly told his probation officer that he was complying through DCS referrals while telling DCS he was complying through probation referrals, neither of which was true."

¶16         At trial, Father testified that he used heroin for ten years, and the last time was in December 2018. Father also testified that he planned to participate in treatment at Copper Springs, but at the time of trial, he had not yet started treatment. Father has not submitted to any drug tests to confirm his claims, and at the time of trial, Father had still not participated in any outpatient substance-abuse treatment program. After providing him with various services for two years, the decision not to wait even longer to see whether Father would now participate in substance-abuse treatment does not render DCS' efforts unreasonable.

¶17         Based upon the record before us, reasonable evidence supports the superior court's finding that DCS made reasonable efforts to provide Father with reunification services. It was not a lack of time for services, but rather a lack of effort from Father, that prevented Father from proving his willingness and ability to parent.

**CONCLUSION**

¶18        For the foregoing reasons, we affirm the superior court's order terminating Father's parental relationship to the children.



AMY M. WOOD • Clerk of the Court
FILED:  AA