NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

---

IN RE TERMINATION OF PARENTAL RIGHTS AS TO K.C.

No. 1 CA-JV 24-0119

FILED 05-15-2025

---

Appeal from the Superior Court in Maricopa County
No. JD534907
The Honorable Joshua D. Rogers, Judge

**AFFIRMED**

---

COUNSEL

Moshier Law Firm PC, Phoenix
By Trail Potter, Jennifer K. Moshier
*Counsel for Intervenors/Appellants*

Amanda Hopkins, Mesa
*Appellant*

Arizona Attorney General's Office, Tucson
By Jennifer R. Blum
*Counsel for Appellee*

---

**MEMORANDUM DECISION**

---

Judge James B. Morse Jr. delivered the decision of the Court, in which Presiding Judge Jennifer M. Perkins and Judge D. Steven Williams joined.

---

**M O R S E**, Judge:

¶1          Grandparents, acting as Intervenors, and Mother appeal from the juvenile court's order terminating Mother's parental rights. For the following reasons, we affirm.

### FACTS AND PROCEDURAL BACKGROUND

¶2          In May 2022, the Department of Child Safety ("DCS") removed Mother's two children from the home due to Mother's substance abuse and placed them with Grandparents. Mother gave birth to K.C. one month later. Mother regularly used fentanyl and methadone during the pregnancy. After investigation, K.C. was placed with her maternal aunt and uncle. But K.C. and her siblings maintained regular visitation.

¶3          DCS considered placing K.C. with Grandparents, but placed K.C. with her aunt and uncle after Grandparents expressed concern about her required level of care due to substance exposure during pregnancy. In October 2022, Mother began substance-abuse treatment. During treatment, Mother repeatedly tested positive for fentanyl. Mother entered inpatient drug treatment in June 2023 but relapsed again that July.

¶4          Throughout this period, K.C. remained in the care of her aunt and uncle. In November 2023, the court granted Grandparents' motion to intervene in the placement of K.C. Grandparents then moved for change of physical custody and requested K.C. be placed with them. The court found that removing K.C. from her current placement was not in her best interests and denied the motion.

¶5          Meanwhile, Mother sporadically participated in substance-abuse treatment but stopped altogether by January 2024. In February 2024, DCS moved to terminate Mother's parental rights to allow K.C.'s aunt and uncle to adopt her. In response, Mother moved to appoint Grandparents

as K.C.'s permanent guardians. The juvenile court denied Mother's motion and terminated her parental rights in June 2024.

**¶6** Appellants timely appealed the termination order, and we have jurisdiction under A.R.S. §§ 8-235(A), 12-120.21(A)(1), and -2101(A)(1).

## DISCUSSION

**¶7** Mother appeals the order terminating her parental rights. But two of the issues raised in her opening brief concern the juvenile court's denial of: (1) Grandparents' motion to place K.C. with them; and (2) Mother's guardianship motion. Mother argues the juvenile court erred by denying a guardianship hearing and failing to order DCS to complete a bonding assessment between K.C. and her aunt and uncle. Mother also argues that DCS failed to provide appropriate reunification services.

**¶8** Grandparents argue the juvenile court erred by: (1) denying their change-of-custody motion; (2) terminating Mother's parental rights; (3) failing to make findings that placing the siblings together was impossible; (4) finding DCS made reasonable efforts to place the siblings together; and (5) excluding them from the termination trial.

**¶9** We address these arguments in turn.

## I. Mother's Claims.

### A. Denial of Mother's Permanent-Guardianship Motion.

**¶10** On March 26, 2024, Mother moved to appoint Grandparents as K.C.'s permanent guardians pursuant to A.R.S. § 8-872. Such motions are known as "Title 8 guardianship motions" and orders "granting or denying a Title 8 guardianship motion" are final orders. Ariz. R. P. Juv. Ct. 601(b)(2)(I). A party has 15 days to appeal from a final order. Ariz. R. P. Juv. Ct. 603(a)(1)(A).

**¶11** Mother argues the juvenile court never ruled on the motion, depriving her of the ability to appeal. This is incorrect. The court denied the motion on April 16, 2024. And Mother acknowledged that the court had denied her motion when she sought reconsideration of the denial on April 24, 2024. Mother did not file her notice of appeal until July 2024. Because Mother failed to timely appeal, we lack jurisdiction to review this claim.

## B.      Siblings' Rights to be Placed Together.

**¶12**          Mother next argues the juvenile court erred by not ordering a bonding assessment between K.C. and her maternal aunt and uncle, which affected K.C.'s placement with her siblings.  The State notes that placement orders may not be appealable.  Because the bonding assessment only relates to the placement decision, and Mother's parental rights have since been terminated, we need not address this issue.  *See In re O.M.*, 254 Ariz. 543, 545, ¶ 9 (App. 2023) ("A parent lacks standing to challenge a child's placement once parental rights are terminated.").

## C.      DCS's Failure to Make Reunification Efforts.

**¶13**          Mother next argues that DCS did not make sufficient reunification efforts.

**¶14**          When a party fails to argue a claim, this Court may deem the issue as waived.  *Crystal E. v. Dep't of Child Safety*, 241 Ariz. 576, 577, ¶ 5 (App. 2017).  In her opening brief, Mother does not explain how DCS failed to make sufficient reunification efforts nor point to services that would have been successful in reunifying the family had they been offered.  Instead, Mother only cites and discusses cases regarding DCS's general responsibility to provide reunification services.  Accordingly, Mother has waived her argument regarding DCS's reunification efforts.  *See Christina G. v. Ariz. Dep't of Econ. Sec.*, 227 Ariz. 231, 234, ¶ 14 n.6 (App. 2011) (stating that failure to develop an argument on appeal usually results in waiver of the issue).

## II.      Grandparents' Claims.

## A.      Denial of Change-of-Custody Motion.

**¶15**          Grandparents argue the juvenile court erred in denying their change-of-custody motion, and the court was required to make a finding that it was impossible to place the siblings together.

**¶16**          Grandparents have "no right to placement of a child in the absence of an order granting third-party rights."  *Jewel C. v. Dep't of Child Safety*, 244 Ariz. 347, 350, ¶ 7 (App. 2018).  The juvenile court granted Grandparents' motion to intervene but did not grant them third-party rights.  *See id.* (stating a grandparent has no third-party rights absent a court order granting such rights under A.R.S. § 25-409).  Therefore, Grandparents are not an aggrieved party and, like Mother, *see supra* ¶ 12, cannot appeal the denial of their change-of-custody motion.  *See* A.R.S. § 8-235(A) (stating

a party must be aggrieved to appeal); *Jewel C.*, 244 Ariz. at 350, ¶ 7 (concluding that because grandparent had no right to placement of the child, they were not aggrieved by the ruling on a change-of-placement motion).

### B.    Denial of Guardianship Hearing.

**¶17**        Grandparents next argue the juvenile court erred by denying Mother's motion to establish a permanent guardianship without holding an evidentiary hearing.  As addressed *supra* ¶¶ 10–11, Grandparents did not timely appeal and therefore we lack jurisdiction to address this issue.

### C.    Termination of Parental Rights.

**¶18**        Next, Grandparents argue that terminating Mother's parental rights was not in K.C.'s best interests.  An aggrieved party may appeal a final order.  A.R.S. § 8-235(A).  But, as discussed *supra* ¶ 16, Grandparents are not aggrieved parties.  Therefore, Grandparents lack standing to challenge the termination of Mother's parental rights. *See Jewel C.*, 244 Ariz. at 349–50, ¶¶ 3–7 (concluding that, despite grandmother's right to intervene, she had no right to placement of the child, and was therefore not an aggrieved party); *see also Patricia S. v. Dep't of Child Safety*, 1 CA-JV 20-0371, 2021 WL 2941762 (Ariz. App. July 13, 2021) (mem. decision) (analyzing when a grandparent may be an aggrieved party to challenge a parent's termination).

### D.    Exclusion of Grandparents from Termination Trial.

**¶19**        Grandparents next argue the juvenile court erred by not allowing them to participate in the termination adjudication hearing because the court granted their motion to intervene.

**¶20**        But Grandparents' motion to intervene was for the limited purpose of determining K.C.'s placement, not termination of Mother's parental rights.  And Grandparents' opening brief acknowledges that in granting the motion, the juvenile court judge made statements limiting the scope of intervention to placement issues.  Accordingly, we find no error. *See* Ariz. R. P. Juv. Ct. 113(c) (stating that intervening parties may not participate "on all issues" if the court "limit[s] the scope" of the intervention).

### E.      Reasonable Efforts to Place Children Together.

**¶21**      Grandparents also argue the juvenile court erred by finding DCS made reasonable efforts to place the children together.  As discussed *supra* ¶ 16, Grandparents lack standing to raise this issue and we decline to address it.

## CONCLUSION

**¶22**      We affirm.

