IN THE

# ARIZONA COURT OF APPEALS

DIVISION TWO

———————————————

IN RE TERMINATION OF PARENTAL RIGHTS AS TO B.B.

No. 2 CA-JV 2025-0043
Filed January 8, 2026

———————————————

Appeal from the Superior Court in Pima County
No. S20240169
The Honorable Janet C. Bostwick, Judge

**VACATED AND REMANDED**

———————————————

COUNSEL

Attorney Slade Smith PLLC, Tucson
By Slade Smith
*Counsel for Appellant*

Stuart & Blackwell PLLC, Chandler
By Cory A. Stuart
*Counsel for Appellees*

Pima County Office of Children's Counsel, Tucson
By Jordan E. Paul
*Counsel for Minor*

**OPINION**

Judge O'Neil authored the opinion of the Court, in which Vice Chief Judge Eppich and Judge Sklar concurred.

O' N E I L, Judge:

¶1        In this appeal, we are asked to interpret A.R.S. § 8-533(B)(5), which provides that a parent-child relationship may be terminated when "the potential father failed to file a paternity action within thirty days of completion of service of notice as prescribed in" A.R.S. § 8-106(G). Specifically, we must consider whether § 8-533(B)(5) permits termination on this ground for a potential father who filed a paternity action but did not timely serve it, resulting in dismissal of the action. We conclude that § 8-533(B)(5) does not contemplate termination on this basis. When a child's potential father has filed a paternity action, his status, his rights, and any parent-child relationship are conclusively determined in that action, rendering § 8-533(B)(5) inapplicable. Under the facts of this case, Dustin G.'s status as a potential father ended when his paternity action was dismissed with prejudice. He had no other rights that needed to be separately terminated under § 8-533(B)(5). Accordingly, we vacate the juvenile court's termination ruling and remand for the court to dismiss the petition to terminate Dustin's rights.

**Factual and Procedural Background**

¶2        We view the facts in the light most favorable to affirming the juvenile court's ruling. *See Christina G. v. Ariz. Dep't of Econ. Sec.*, 227 Ariz. 231, ¶ 13 (App. 2011). After Madeline B. gave birth to B.B. in August 2024, she signed a relinquishment and consent to place him for adoption. Madeline indicated that Dustin, her long-term boyfriend with whom she was then living, was B.B.'s "potential father." B.B. was placed with Adoption Solutions of Arizona (ASA), an adoption agency, which in turn placed B.B. with Paul and Elizabeth C., a Pennsylvania couple.

¶3        Wishing to adopt B.B., Paul and Elizabeth filed a petition to terminate Madeline's and Dustin's parental rights as to B.B.[1] They alleged

---

[1]The juvenile court terminated Madeline's parental rights. She is not a party to this appeal.

§ 8-533(B)(5) as the ground for terminating Dustin's rights.[2]  On September 14, 2024, they served Dustin with notice, as required by § 8-106(G), that Madeline had identified him as B.B.'s potential father, that she planned to place B.B. for adoption, and that Dustin had the right to consent or withhold his consent to the adoption.  The notice further provided:

> If you withhold your consent to the adoption and wish to oppose the adoption, you must initiate paternity proceedings under Title 25, Chapter 6, Article 1, Arizona Revised Statutes, and serve the birth mother within thirty (30) days after completion of service of this notice. You must comply with the Arizona Rules of Civil Procedure when serving the birth mother.

**¶4**        On October 9, 2024, Dustin filed a paternity petition in Pima County Superior Court case number SP20240777.  Although he reportedly gave Madeline a copy of the petition that same day, Madeline did not sign an acceptance of service showing she had voluntarily accepted a copy of the paternity paperwork until October 18, 2024, and the acceptance of service was not filed until October 21, 2024.  Days later, ASA filed a motion to intervene and a motion to dismiss the paternity action, arguing that Dustin had missed the deadline to serve Madeline.  Dustin failed to appear at a hearing on those motions because he was being held without bond at the Pima County Jail.  The court granted the motion to intervene and gave Dustin leave to respond to the motion to dismiss.  Dustin failed to respond, and the court dismissed the paternity action with prejudice in January 2025.

**¶5**        The following month, Paul and Elizabeth filed an amended petition to terminate the parent-child relationship.  Dustin then filed a motion to dismiss the termination case as a matter of law, arguing that he had "filed" for paternity "within the statutorily mandated 30 days" under § 8-533(B)(5).  Paul and Elizabeth also filed a motion for partial summary judgment, seeking to terminate Dustin's parental rights under § 8-533(B)(5) because he had "failed to file and serve" his paternity petition within thirty days of the § 8-106(G) notice.

**¶6**        The juvenile court held an evidentiary hearing and denied both the motion to dismiss and the motion for partial summary judgment.

---

        [2] Paul and Elizabeth also alleged § 8-533(B)(6) as a ground for termination, but they later withdrew that ground.

After a contested severance trial, the court granted the petition to terminate Dustin's parental rights. The court noted that the case involved a "dispositive question of law of statewide interest" and asked this court "to clarify whether a potential father must meet all requirements as prescribed in A.R.S. § 8-106(G) at risk of termination of rights under A.R.S. § 8-533(B)(5) or need only 'file a paternity action within thirty days.'"[3] As to that question, the court concluded that the "potential father requirements in § 8-106(G)," including service on the mother and proceeding to a judgment, "apply to § 8-533(B)(5) by reference." The court explained that reading § 8-533(B)(5) "in isolation renders [the] § 8-106(G) requirements meaningless in termination cases and would lead to absurd results" because a "potential father who fails to comply with § 8-106(G) would have his rights terminated by adoption but could survive termination under § 8-533(B)(5)." Because Dustin failed to timely serve Madeline with the paternity paperwork and failed to proceed to a judgment, the court concluded that termination of Dustin's parental rights "is the result the facts and law require." The court further found that termination was in B.B.'s best interests. This appeal followed.

## Discussion

¶7        Dustin contends the juvenile court erred by terminating his parental rights because § 8-533(B)(5) applies only when a father fails to timely file a paternity action. Because this issue involves statutory interpretation, our review is de novo. *Albert L. v. Dep't of Child Safety*, 253 Ariz. 146, ¶ 13 (App. 2022). "When interpreting statutes, we begin with the text." *In re Riggins*, 257 Ariz. 28, ¶ 12 (2024) (quoting *Franklin v. CSAA Gen. Ins. Co.*, 255 Ariz. 409, ¶ 8 (2023)). We determine the meaning of the text based on "the plain meaning of the words in their broader statutory context." *In re Chalmers*, ___ Ariz. ___, ¶ 12, 571 P.3d 885, 888 (2025). In so doing, "we look to the statute as a whole and we may also consider statutes that are *in pari materia*—of the same subject or general purpose—for guidance and to give effect to all of the provisions involved." *State Farm Auto. Ins. Co. v. Orlando*, 259 Ariz. 531, ¶ 10 (2025) (quoting *Stambaugh v.*

---

[3] The juvenile court designated this issue as one appropriate for special-action review pursuant to Rule 13(a), Ariz. R. P. Spec. Act. Dustin, however, filed a timely notice of appeal rather than seeking special-action review. *See Stapert v. Ariz. Bd. of Psych. Exam'rs*, 210 Ariz. 177, ¶ 21 (App. 2005) (special-action jurisdiction reserved for extraordinary circumstances and not available when equally plain, speedy, and adequate remedy by appeal exists).

*Killian*, 242 Ariz. 508, ¶ 7 (2017)).  If the statutory language in context is clear and unambiguous, it controls unless the result is unconstitutional or absurd.  *Carson v. Gentry*, ___ Ariz. ___, ¶¶ 56, 58, 574 P.3d 205, 218 (2025).

¶8　　　　The juvenile court may terminate a parent's rights if it finds by clear and convincing evidence that at least one of the statutory grounds for termination exists and by a preponderance of the evidence that termination of the parent's rights is in the child's best interests.  A.R.S. §§ 8-533(B), 8-537(B); *Sandra R. v. Dep't of Child Safety*, 248 Ariz. 224, ¶ 12 (2020).  Section 8-533(B)(5) provides, as a basis for terminating the rights of a man who might be the child's father but has not established paternity, "that the potential father failed to file a paternity action within thirty days of completion of service of notice as prescribed in § 8-106, subsection G."

¶9　　　　Although § 8-533(B)(5) does not specifically mention the failure to serve as a basis for termination, the juvenile court in this case concluded that the statute's language incorporates the provisions of § 8-106(G), including a timely service requirement.  In essence, this understanding of § 8-533(B)(5) would require the words "as prescribed in § 8-106, subsection G" to modify a potential father's responsibility to "file a paternity action."  In other words, it would mean that § 8-533(B)(5) authorizes termination when a potential father fails "to file a paternity action . . . as prescribed in § 8-106, subsection G."  A close reading of both § 8-533(B)(5) and § 8-106(G), however, reveals two significant problems with this interpretation.

¶10　　　　First, the language of § 8-533(B)(5) indicates a different meaning.  According to the nearest-reasonable-referent canon, a modifier should generally apply to the most proximate reasonable referent.  Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 152 (2012); *see Angulo-Murrieta v. City of Yuma*, 251 Ariz. 86, ¶ 16 (App. 2021) (applying canon to criminal statute).  In § 8-533(B)(5), this would mean the words "as prescribed in § 8-106, subsection G" modify the "service of notice" that triggers a potential father's responsibility to file a paternity action.  In other words, when a father has received "service of notice as prescribed in § 8-106, subsection G," his failure to timely file a paternity action becomes a basis to terminate his rights.  § 8-533(B)(5).

¶11　　　　Second, § 8-106(G) does not prescribe filing or any other requirements for paternity actions, which are addressed elsewhere in our statutory scheme.  *See* A.R.S. §§ 25-801 to 25-818.  Indeed, § 8-106(G) does not place any requirements on potential fathers at all.  It would make little sense for § 8-533(B)(5) to require a potential father to file a paternity action

"as prescribed in § 8-106, subsection G" when § 8-106(G) does not establish prescriptions for filing paternity actions. Rather, § 8-106(G) outlines the information a potential father must be provided when served with notice of an adoption:

> 1. That adoption is planned.
>
> 2. The potential father's right to consent or withhold consent to the adoption.
>
> 3. The potential father's responsibility to initiate paternity proceedings under title 25, chapter 6, article 1, and to serve the mother within thirty days of completion of service.
>
> 4. The potential father's responsibility to proceed to judgment in the paternity action.
>
> 5. The potential father's right to seek custody.
>
> 6. The potential father's responsibility to begin to provide financial support for the child if paternity is established.
>
> 7. That the potential father's failure to file a paternity action pursuant to title 25, chapter 6, article 1, and to serve the mother and proceed to judgment in the paternity action as prescribed by this section, bars the potential father from bringing or maintaining any action to assert any interest in the child.

Although § 8-106(G) requires potential fathers to be provided with notice of various rights and obligations, including the responsibility to both file and serve a paternity action, this subsection does not directly govern potential fathers. It provides the substantive requirements for adoption notices that must be given to a potential father. This further supports a conclusion that it is the "service of notice" in § 8-533(B)(5) that must be completed "as prescribed in § 8-106, subsection G," because notice to potential fathers is precisely what § 8-106(G) prescribes.

¶12 Reading these provisions together compels the conclusion that § 8-533(B)(5) authorizes termination based only on a potential father's failure to timely file a paternity action after being served with an adoption

notice. Our analysis, however, cannot end here, given our obligation to consider § 8-533(B)(5) in context with the broader statutory scheme. *State v. Serrato*, ___ Ariz. ___, ¶ 16, 568 P.3d 756, 760 (2025).

¶13 The trial court was not wrong to note the possibility for absurd results from the inability to terminate the rights of a potential father who ignores the warnings in an adoption notice under § 8-106(G). It would be strange to require such stern warnings if failure to heed them lacked meaningful consequence. It is especially difficult to reconcile the warning that the failure to timely file, serve, and proceed to judgment in a paternity action "bars the potential father from bringing or maintaining any action to assert any interest in the child" with Dustin's apparent proposition that a potential father who has failed in that very way nonetheless retains an interest of some kind that cannot be terminated. Such a result would place some potential fathers forever in limbo, with rights that can neither be established nor terminated. Worse, if these rights allowed potential fathers, unable to assert their own rights, to nonetheless interfere with or prevent adoption, it could create a class of permanently fatherless children. At oral argument, Paul and Elizabeth argued that this risk is especially acute in the context of out-of-state adoptions, where they assert that termination orders are frequently required before the adoption may proceed. Fortunately, understood within the broader statutory scheme, § 8-533(B)(5) leads to no such outcome. *See Carson*, ___ Ariz. ___, ¶ 56, 574 P.3d at 218 (courts must avoid statutory interpretation that leads to absurd outcomes).

¶14 A potential father is "a man, identified by the mother in an affidavit, who is or could be the father of the child, but whose paternity has not been established." *David C. v. Alexis S.*, 240 Ariz. 53, ¶ 14 (2016). He is not the child's legal father. A legal father "is one who was married to the mother between the time of conception and birth, has adopted the child, or has legally established paternity." *Id.* ¶ 13. A potential father has a right to seek paternity and thus establish his rights as the child's legal father, and he is entitled to notice of adoption proceedings so that he has an opportunity to do so before the child is adopted. *Id.* ¶¶ 13-15. But only a legal father must consent to a child's adoption. § 8-106(A)(2). A potential father's consent is not required. § 8-106(B). Unless a potential father takes the critical step of filing a paternity action and seeing it through, any potential rights he might have asserted as the child's legal father are never established.

¶15 Indeed, if a potential father fails to timely file and serve a paternity action after receiving an adoption notice, his opportunity to establish parental rights is forever foreclosed. As noted, § 8-106(G)(7)

warns a potential father that his failure to timely file, serve, and proceed to judgment in a paternity action will bar him from asserting an interest in the child.  Section 8-106(J), understood in the context of A.R.S. § 25-804, gives substance to that warning:

> A potential father who fails to file a paternity action and who does not serve the mother within thirty days after completion of service on the potential father . . . waives his right to be notified of any judicial hearing regarding the child's adoption or the termination of parental rights and his consent to the adoption or termination is not required.

*Cox v. Ponce*, 251 Ariz. 302, ¶¶ 8-9 (2021) (explaining that pursuant to § 8-106(J), potential father's failure to comply with strict deadline triggers consequence warned of in § 8-106(G)(7)).  Section 25-804 requires dismissal of any paternity action "that is barred pursuant to § 8-106, subsection J."

¶16          Just as § 8-106(G)(7) warns, if the potential father fails to timely file, or if he files but fails to timely serve, his paternity action is barred and must be dismissed.  *See Cox*, 251 Ariz. 302, ¶¶ 9, 11-12.  If he timely files and serves but does not proceed to judgment, resulting in dismissal, *see* Ariz. R. Fam. Law P. 46(b) (allowing involuntary dismissal for failure to move case forward), any attempt to refile will certainly fall outside the time requirements of § 8-106(J) and will therefore be barred.  And, of course, if the potential father proceeds to judgment on the merits, he is a potential father no longer.  He is either a legal father or no father at all.  Under any of these scenarios, when the potential father files a paternity action, his legal status is determined by the outcome of that action.

¶17          Only when the potential father fails altogether to file a paternity action, and the time to do so has expired, does § 8-533(B)(5) provide for termination of his rights, because only then is termination necessary.  In that scenario, the legislature has provided termination as a means of foreclosing his right to seek paternity, effectively extinguishing his status as a potential father and eliminating any uncertainty.  *Cf. Frank R. v. Mother Goose Adoptions*, 243 Ariz. 111, ¶¶ 24-25 & 24 (2017) (discussing "child's interest in having a stable and permanent home and not being removed from adoptive parents with whom the child has bonded").  But that right is already foreclosed as to a potential father whose paternity action is dismissed with prejudice and barred under § 8-106(J).  *See Cox*, 251 Ariz. 302, ¶¶ 8-9, 11-12, 19 (strict deadline in § 8-106(J) consistent with

"Arizona's strong public policy favoring finality in adoptions"). Any potential he might once have had to establish rights as a legal father is precluded. His status as a potential father is effectively terminated, and he has no remaining rights to terminate.

¶18 In this case, Dustin filed a paternity action, but he did not timely serve it. His action was dismissed with prejudice, and he is barred from establishing paternity under § 8-106(J). Dustin is correct that the trial court lacked a basis to terminate his parent-child relationship under § 8-533(B)(5), but only because he had no legal relationship to terminate.

## Disposition

¶19 We vacate the juvenile court's ruling terminating Dustin's parental rights to B.B. and remand for the court to dismiss the petition to terminate Dustin's rights. We recognize that the parties and especially B.B., having so thoroughly litigated the question of Dustin's status and rights as a potential father, may have an interest in a conclusive determination by the court that Dustin's potential parental rights are foreclosed and his consent to adoption is not required. Our opinion does not preclude the court, in entering its dismissal order, from making appropriate findings to that effect.