NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

NORMAN S., *Appellant*,

*v.*

DEPARTMENT OF CHILD SAFETY, N.S., *Appellees*.

No. 1 CA-JV 19-0049
FILED 8-29-2019

Appeal from the Superior Court in Maricopa County
No. JD 531037
The Honorable Karen L. O'Connor, Judge

**AFFIRMED**

COUNSEL

Maricopa County Legal Defender's Office, Phoenix
By Jamie R. Heller
*Counsel for Appellant*

Arizona Attorney General's Office, Phoenix
By Thomas Jose
*Counsel for Appellee, Department of Child Safety*

---

## MEMORANDUM DECISION

Presiding Judge Michael J. Brown delivered the decision of the Court, in which Judge Kent E. Cattani and Chief Judge Peter B. Swann joined.

---

**B R O W N**, Judge:

**¶1** Norman S. ("Father") appeals the superior court's order terminating his parental rights to his son, N.S., born in 2017. Because reasonable evidence supports the court's order, we affirm.

## BACKGROUND

**¶2** When N.S. was born, Amanda H. ("Mother") had a pending dependency with three of her other children, I.H., M.H., and B.H.[1] DCS had provided Mother in-home family preservation services until July 2017, at which time DCS filed an in-home dependency petition for I.H., M.H., and B.H. and established a safety plan for Mother. After Mother gave birth to N.S., she violated the safety plan and was not fully participating in services, so DCS took all four children into temporary custody.

**¶3** DCS then filed a dependency petition alleging N.S. was dependent as to Father due to substance abuse, domestic violence, and neglect. Although Father contested the allegations, he failed to appear for the dependency hearing and the juvenile court found N.S. dependent.

**¶4** In July 2018, DCS moved to terminate Father's parental rights to N.S. on the grounds of substance abuse, six months' out-of-home placement, and nine months' out-of-home placement. DCS asserted that (1) Father "has a history of substance abuse that includes but is not limited to marijuana and it negatively impacts his ability to parent;" (2) "[s]ignificant concerns remain regarding the serious domestic violence relationship" between Father and Mother; and (3) Father inconsistently engaged in the services DCS offered. DCS filed an amended motion in January 2019 that

---

[1] I.H., M.H., and B.H. were part of the dependency action in the juvenile court and the court's order terminates Mother's parental rights to these three children and N.S.; however, I.H., M.H., and B.H. are not Father's biological children and Mother is not a party to this appeal.

included the ground of fifteen months' time-in-care, stating in part that the parents continue to engage domestic violence.

¶5        The following month the juvenile court held a termination hearing at which DCS presented numerous exhibits and the testimony of one witness—DCS case specialist Sandra Butler.  The court later granted the motion for termination, finding that DCS proved each of the alleged grounds and that termination was in N.S.'s best interests.  Father timely appealed.

## DISCUSSION

¶6        To terminate parental rights, a court must find (1) by clear and convincing evidence one  of  the  statutory grounds articulated  in A.R.S. § 8–533(B), and (2) by a preponderance of the evidence that termination is in the child's best interests.  *Kent K. v. Bobby M.*, 210 Ariz. 279, 284, ¶ 22 (2005).  We will affirm an order terminating parental rights if it is supported by reasonable evidence.  *Jordan C. v. Ariz. Dep't of Econ. Sec.*, 223 Ariz. 86, 93, ¶ 18 (App. 2009).   As the trier of fact, "[t]he juvenile court is in the best position to weigh the evidence, observe the parties, judge the credibility of witnesses, and make appropriate findings." *Christina G. v. Ariz. Dep't of Econ. Sec.*, 227 Ariz. 231, 234, ¶ 13 (App. 2011).  We therefore view the evidence "in the light most favorable to sustaining the court's decision." *Jordan C.*, 223 Ariz. at 93, ¶ 18 (citation omitted).

### A.        Fifteen Months' Out-of-Home Placement

¶7        To terminate on the fifteen months' ground, DCS was required to prove (1) the child was in an out-of-home placement for a cumulative period of 15 months or longer; (2) it made a "diligent effort to provide appropriate reunification services"; (3) Father did not remedy the circumstances requiring the out-of-home placement; and (4) "there is a substantial likelihood that the parent will not be capable of exercising proper and effective parental care and control in the near future." A.R.S. § 8-533(B)(8)(c).

¶8        Father challenges only the fourth element, asserting the evidence was insufficient to show he would be unable to effectively parent in the near future because he "participated in all required DCS reunification services and successfully completed many of them," including paternity testing, a psychological evaluation, substance abuse treatment, parent aide services, and supervised visits.  He also points to  his active involvement in domestic violence counseling, a safe home, stable employment, and successful completion of substance abuse services.  The record confirms

that for the most part, Father participated in the services DCS offered; however, he failed to resolve the two primary issues DCS repeatedly identified as critical in reunifying Father with the child—domestic violence and substance abuse.

¶9        Butler testified regarding Father's domestic violence against Mother. For example, she explained that the most recent incident occurred in January 2019—more than 15 months into the dependency—and although Mother recanted her report to the police about Father punching her in the face, she had shown Butler a text message from Father telling Mother she needed to change her story, "otherwise I'm going to be convicted. I'm going to get a felony." Butler also testified that Mother sent her pictures of past instances of domestic violence, and DCS had "talked to [Mother and Father] on multiple occasions regarding [staying] apart, telling them that they're not going to reunify if they continue to have a relationship together because of the domestic violence issues." Despite these warnings, Mother and Father continued to have a relationship and lived together intermittently until the date of the hearing.

¶10        Butler also testified that DCS was concerned about Father's substance abuse, noting that he tested positive for methamphetamine in January 2019. Butler believed Father's substance abuse was tied to his "behavior of domestic violence," and it negatively affected his participation in services. Butler also explained that Father never reached a point during the dependency where DCS believed it would be safe to allow him to have unsupervised visits with the child.

¶11        Reasonable evidence supports the juvenile court's findings that despite given the opportunity, Father did not fully engage in the services offered, he did not demonstrate he can maintain sobriety in order to parent the child, and he failed to show he can "provide the child a violence-free environment" in the near future. Because clear and convincing evidence supports the termination of Father's parental rights based on fifteen months out-of-home-placement, we do not address his arguments relating to the other grounds. *See Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 280, ¶ 3 (App. 2002).

### B.    Best Interests

¶12        Father also challenges the juvenile court's finding that termination is in N.S.'s best interests. Father asserts the record demonstrates that he had housing, was employed, and met N.S.'s needs during visitations; thus, it is in N.S.'s best interests to give Father more time

so N.S. can "reunify with a biological parent who [has] demonstrated a commitment to care for [him]."

**¶13** We view "the record in the light most favorable to upholding the court's best-interests finding" and will affirm if it is supported by reasonable evidence. *Alma S. v. Dep't of Child Safety*, 245 Ariz. 146, 152, ¶ 21 (2018). Termination is in a child's best interests if "the totality of the circumstances at the time of severance" establishes by a preponderance of the evidence that the child will *either* benefit from the termination or be harmed if it is denied. *Id.* at 150, ¶ 13. In making this finding, the court may consider several factors, including whether the child is likely to be adopted, *see Maricopa Cty. Juv. Action JS-500274*, 167 Ariz. 1, 6 (1990), will be freed from an abusive parent, *id.*, or an existing placement is meeting the child's needs, *Audra T. v. Ariz. Dep't of Econ. Sec.*, 194 Ariz. 376, 377, ¶ 5 (App. 1998).

**¶14** The juvenile court found that termination was in the child's best interests because he had been in an out-of-home placement since his birth, his placement was meeting his needs and was willing to adopt him, and Father has been unable to provide him a violence-free home. The record supports these findings. Butler testified that (1) the child's physical, social, medical, psychological, and emotional needs were being met by an adoptive placement; (2) adoption would provide him with permanency; and (3) not terminating Father's rights would expose the child to domestic violence and substance abuse.

**CONCLUSION**

**¶15** We affirm the juvenile court's order terminating Father's parental rights to N.S.

