NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS

## DIVISION ONE

TIFFANY L., *Appellant*,

*v.*

DEPARTMENT OF CHILD SAFETY, I.J., *Appellees*.

No. 1 CA-JV 20-0093

FILED 9-22-2020

Appeal from the Superior Court in Maricopa County
No. JS20006, JD29245
The Honorable Bernard C. Owens, Judge *Pro Tempore*

**AFFIRMED**

COUNSEL

Maricopa County Public Advocate's Office, Mesa
By Suzanne Sanchez
*Counsel for Appellant*

Arizona Attorney General's Office, Tucson
By Autumn L. Spritzer
*Counsel for Appellee Department of Child Safety*

---

**MEMORANDUM DECISION**

Presiding Judge Samuel A. Thumma delivered the decision of the Court, in which Judge D. Steven Williams and Judge David D. Weinzweig joined.

---

**T H U M M A**, Judge:

**¶1**        Tiffany L. (Mother) challenges the order terminating her parental rights to her biological child I.J. Mother argues the Department of Child Safety (DCS) did not provide appropriate reunification services, including in the manner a DCS expert recommended. Because Mother has shown no error, the order is affirmed.

## FACTS AND PROCEDURAL HISTORY

**¶2**        Mother, who is not yet 25 years old, has been involved with DCS nearly her entire adult life. She has six biological children. Her four older children came into care at various times starting in October 2014 given Mother's neglect, failure to protect, and functional and behavioral health limitations. By May 2018, her parental rights to those four children had been terminated.

**¶3**        During the three and a half years the older children were in care, DCS provided numerous services to Mother. Mother's behaviors, however, did not materially change or improve.

**¶4**        I.J. was born in late 2018. In February 2019, DCS filed a supplemental dependency petition after learning Mother was neglecting I.J. and not providing for his basic needs. I.J. was found dependent as to Mother in March 2019, and the court adopted a family reunification case plan concurrent with severance and adoption. In April 2019, DCS petitioned to terminate Mother's parental rights to I.J. based on mental deficiency and prior termination within two years on the same grounds. *See* Ariz. Rev. Stat. (A.R.S.) § 8-533(B)(3), (B)(10) (2020).[1]

**¶5**        DCS provided services to Mother during I.J.'s dependency as discussed below. Ultimately, the court held a two-day termination

---

[1] Absent material revisions after the relevant dates, statutes and rules cited refer to the current version unless otherwise indicated.

adjudication in December 2019. In February 2020, the court issued a 31-page minute entry granting the petition on both grounds alleged, also finding termination was in I.J.'s best interests. This court has jurisdiction over Mother's timely appeal pursuant to Article 6, Section 9, of the Arizona Constitution, A.R.S. §§ 8-235(A), 12-120.21(A)(1) and Arizona Rules of Procedure for the Juvenile Court 103 and 104.

## DISCUSSION

**¶6**        As applicable here, to terminate parental rights, a court must find by clear and convincing evidence that at least one statutory ground articulated in A.R.S. § 8-533(B) has been proven and must find by a preponderance of the evidence that termination is in the best interests of the child. *See Kent K. v. Bobby M.*, 210 Ariz. 279, 288 ¶ 41 (2005); *Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 249 ¶ 12 (2000). Because the superior court "is in the best position to weigh the evidence, observe the parties, judge the credibility of witnesses, and resolve disputed facts," this court will affirm an order terminating parental rights so long as it is supported by reasonable evidence. *Jordan C. v. Ariz. Dep't of Econ. Sec.*, 223 Ariz. 86, 93 ¶ 18 (App. 2009) (citation omitted).

**¶7**        Mother challenges the adequacy of the services provided to her, arguing DCS did not follow the recommendations of Dr. Roger Martig. DCS has an obligation to make diligent efforts to provide appropriate reunification services. *Christina G. v. Ariz. Dep't of Econ. Sec.*, 227 Ariz. 231, 235 ¶ 15 (App. 2011); *accord Mary Ellen C. v. Ariz. Dep't of Econ. Sec.*, 193 Ariz. 185, 192 ¶ 37 (App. 1999).

> Although [DC]S need not provide "every conceivable service," it must provide a parent with the time and opportunity to participate in programs designed to improve the parent's ability to care for the child. The State does not provide such opportunity or make a "concerted effort to preserve" the parent-child relationship when it neglects to offer the very services that its consulting expert recommends.

*Id.* (citations omitted). DCS discharges these obligations when it provides a parent "the time and opportunity to participate in programs designed to help her become an effective parent." *Maricopa Cty. Juv. Action No. JS-501904*, 180 Ariz. 348, 353 (App. 1994).

¶8          DCS provided Mother many services over a period of years, both in proceedings involving I.J.'s four older siblings and in this dependency involving I.J., including counseling, parent aide services, case aide services, supervised visitation, parenting classes, psychological evaluations, psychiatric evaluation and counseling. Notwithstanding these services, Mother showed little or no change in behavior or improvement of parenting skills. Indeed, in terminating Mother's parental rights to I.J., the court concluded that the reunification efforts had been futile.

¶9          In terminating Mother's parental rights to I.J., the court found two psychological evaluations from 2015 and 2017 "recommended similar services" to Dr. Martig's recommendations in 2019. In addressing I.J., the court also found that "DCS made a reasonable effort to provide services appropriate to [Mother's] level of functioning to help her become a minimally adequate parent." Mother has not shown that the trial evidence did not support these conclusions. To the extent she argues the record could have supported different conclusions, she is impermissibly asking this court to reweigh the trial evidence. *See Alma S. v. Dep't of Child Safety*, 245 Ariz. 146, 151-52 ¶¶ 18-19 (2018) ("'The appellate court's role is not to weigh the evidence,' . . . even when 'sharply disputed' facts exist.") (citations omitted).

¶10         Mother argues DCS failed to provide specific services Dr. Martig identified and failed to follow his directive that services be provided in a specific sequence. Mother has not shown what specific services Dr. Martig recommended that DCS was required to provide. As to sequencing, Dr. Martig recommended prioritizing; he did not mandate sequential services as Mother suggests. Although Dr. Martig recommended that Mother prioritize completion of parenting classes, she failed to do so and never successfully completed parenting classes, participating to a limited extent but making limited progress while struggling to remain engaged.

¶11         Dr. Martig did not recommend that Mother "completely disengage from all other services" while prioritizing parenting classes. Indeed, as DCS suggests, given Mother was pregnant for part of the dependency, it would have been impossible to properly disengage from all other services (such as prenatal appointments) pending her completion of parenting classes. Moreover, Mother makes no showing that, after participating in services for three and a half years with her older children with little behavioral change, she then could spend years participating in reunification services one at a time with I.J. On this record, Mother has not shown that the court improperly assessed Dr. Martig's recommendation

regarding priority for services or erroneously found DCS provided Mother appropriate reunification services.

¶12     Mother tries to equate this case to what happened in *Mary Ellen C.* But the mother in *Mary Ellen C.* had not already received three and a half years of services during previous dependencies. Furthermore, unlike here, the mother in *Mary Ellen C.* had received "no significant reunification services for almost a year after" removal and then received counseling that "obviously fell short" of what a consultant had recommended. 193 Ariz. at 192 ¶ 36. Also, unlike here, the mother in *Mary Ellen C.* introduced unrebutted evidence that "her efforts were beginning to bear some fruit, despite the inadequate level of services available." *Id.* at 193 ¶ 40.

¶13     Mother argues that DCS "overloaded" her "with several services, all at once," which was contrary to Dr. Martig's recommendations. But, again, this overstates Dr. Martig's recommendations and does not differentiate between prioritizing services (the phrase Dr. Martig uses) and providing services sequentially (the argument Mother makes). Nor does Mother's argument account for the fact that, given I.J.'s age, permanency is required in months, not the years that sequential, one-by-one services Mother advocates would require. *See* A.R.S. § 8-862(A)(2) (requiring hearing "to determine the future permanent legal status of the child . . . [w]ithin six months after a child who is under three years of age is removed from the child's home").

¶14     Finally, and again citing *Mary Ellen C.*, Mother argues that directing her to self-refer for parenting classes and counseling means DCS failed to provide appropriate reunification services. But the issue for parenting classes and counseling identified by the superior court was Mother's failure to participate after enrolling, not challenges with self-referral and enrollment. For example, the court found Mother completed an intake and a brief counseling session at one service provider in July 2019, but never again attended. After completing an intake at a different service provider in late August 2019, Mother failed to appear for eight sessions in September 2019 and was discharged. Her involvement with a third service provider in October and November 2019 resulted in some initial observations but little else, given Mother's minimal involvement. Mother participated to a limited extent in parenting classes in 2019 but made limited progress and struggled to remain engaged.

¶15     On this record, Mother has failed to show the superior court erred in finding that DCS provided appropriate reunification services.

## CONCLUSION

¶16  The order terminating Mother's rights to I.J. is affirmed.



AMY M. WOOD • Clerk of the Court
FILED:  AA