NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

SARAH D., *Appellant*,

*v.*

DEPARTMENT OF CHILD SAFETY, S.L., V.L., *Appellees*.

No. 1 CA-JV 21-0063
FILED 8-10-2021

Appeal from the Superior Court in Maricopa County
No. JD531539
The Honorable Jeffrey A. Rueter, Judge

**AFFIRMED**

COUNSEL

Maricopa County Public Advocate, Mesa
By Suzanne W. Sanchez
*Counsel for Appellant*

Arizona Attorney General's Office, Mesa
By Eric Devany
*Counsel for Appellee*

---

## MEMORANDUM DECISION

Presiding Judge Cynthia J. Bailey delivered the decision of the Court, in which Judge Jennifer M. Perkins and Judge Maria Elena Cruz joined.

---

**B A I L E Y**, Judge:

**¶1**        Sarah D. ("Mother") appeals from the juvenile court's order terminating her parental rights to her two daughters.  Because Mother has shown no error, we affirm.

### FACTS AND PROCEDURAL HISTORY

**¶2**        Mother and Michael L. ("Father") are the biological parents of three children—a son, G.L., born in March 2018 and two daughters, S.L. and V.L., born in August 2019 and August 2020, respectively.[1]  Mother's parental rights to G.L. were terminated in January 2019 based on abandonment and six-months' time-in-care grounds. *See* A.R.S. § 8-533(B)(1), (8)(b).

**¶3**        Approximately six months after S.L.'s birth, the Department of Child Safety ("DCS") received a report that Father had attempted to strangle Mother, who was pregnant with V.L. at the time.  Although Mother reported to DCS that she was ending the relationship with Father, she returned to him less than two weeks later.

**¶4**        DCS took S.L. into care, placed her with maternal aunt, and filed a dependency petition.  The court adjudicated S.L. dependent as to Mother due to domestic violence and substance abuse and adopted a case plan of family reunification.  DCS provided Mother with domestic violence resources and referred her for a drug test, a psychological evaluation, supervised visitation, and requested she seek trauma counseling and parenting classes.

**¶5**        Four months later, Mother gave birth to V.L.  DCS took V.L. into care, placed her with S.L., and filed a dependency petition alleging she was dependent as to Mother due to neglect, domestic violence, and Mother's mental health issues.  DCS referred Mother for a psychological

---

[1] Although the court terminated Father's parental rights, he is not a party to this appeal.

evaluation and supervised visitation, requested she self-refer for parenting classes, and offered her transportation. Mother's psychological evaluator concluded Mother's IQ was in the low average to extremely low average range. After completing the evaluation, Mother stopped engaging in any other services. After V.L. was born, Mother refused to attend visits with either daughter.

¶6        V.L. was adjudicated dependent as to Mother, and the court adopted a case plan of severance and adoption. DCS then moved to terminate Mother's parental rights to S.L. based on six and nine-months' time-in-care grounds and to both girls based on the 2019 termination of Mother's parental rights to G.L. *See* A.R.S. § 8-533(B)(8)(a)-(b), (B)(10).

¶7        Mother failed to appear at the February 2021 severance trial. The court heard from the DCS department supervisor who described Mother's domestic violence and substance abuse issues. The department supervisor testified that Mother had not engaged in any services and had not remedied the circumstances that caused S.L. to be in an out-of-home placement. The supervisor explained that DCS considered Mother's reduced intellectual capacity when it offered her services. The supervisor also established that Mother's parental rights to G.L. were terminated based on domestic violence, substance abuse, neglect, and time-in-care grounds. She concluded that because Mother did not engage in services, she remained unable to discharge her parental responsibilities for the same reasons. The supervisor testified that termination was in the children's best interests because they were in an adoptive placement that was meeting their needs.

¶8        The court terminated Mother's parental rights to S.L. on six and nine-months' time-in-care grounds and to both girls on the prior termination within two years ground. *See* A.R.S. § 8-533(B)(8)(a)-(b), (B)(10).

¶9        We have jurisdiction over Mother's timely appeal pursuant to Article 6, Section 9, of the Arizona Constitution, A.R.S. §§ 8-235(A), 12-120.21(A)(1) and -2101(A)(1), and Arizona Rules of Procedure for the Juvenile Court 103 and 104.

## DISCUSSION

¶10        To terminate parental rights, a court must find clear and convincing evidence of at least one statutory ground in A.R.S. § 8-533(B) and must find by a preponderance of the evidence that termination is in the child's best interests. *See Kent K. v. Bobby M.*, 210 Ariz. 279, 288, ¶ 41 (2005); *Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 249, ¶ 12 (2000). Because

the juvenile court "is in the best position to weigh the evidence, observe the parties, judge the credibility of witnesses, and resolve disputed facts," we will affirm an order terminating parental rights if it is supported by reasonable evidence. *Jordan C. v. Ariz. Dep't of Econ. Sec.*, 223 Ariz. 86, 93, ¶ 18 (App. 2009) (citation omitted).

**¶11** Termination under a prior severance ground requires proof that the parent's "parental rights to another child [were] terminated within the preceding two years for the same cause and [the parent] is currently unable to discharge parental responsibilities due to the same cause." A.R.S. § 8-533(B)(10). "[S]ame cause" refers to the factual cause that resulted in the termination, not the statutory grounds. *Mary Lou C. v. Ariz. Dep't of Econ. Sec.*, 207 Ariz. 43, 48, ¶ 11 (App. 2004). DCS must "prove by clear and convincing evidence that it had made a reasonable effort to provide [the parent] with rehabilitative services or that such an effort would be futile." *Id.* at 49, ¶ 15 (citation omitted).

**¶12** Because Mother failed to appear at the trial without good cause, the court properly found she waived her legal rights and admitted the factual allegations of the petition. *See* A.R.S. § 8-863(C); Ariz. R. P. Juv. Ct. 66(D)(2); *see also Brenda D. v. Dep't of Child Safety*, 243 Ariz. 437, 443-44, ¶¶ 22, 24 (2018). Mother, therefore, admitted she did not participate in any DCS services, including the counseling recommended before her psychological evaluation.

**¶13** Mother's only argument on appeal is that once DCS became aware of her reduced intellectual capacity it should have arranged the counseling services recommended by the evaluator. She does not dispute the court's other findings that support termination.

**¶14** "[DCS] must provide services to the parent with the time and opportunity to participate in programs designed to help her become an effective parent." *Christina G. v. Ariz. Dep't of Econ. Sec.*, 227 Ariz. 231, 235, ¶ 14 (App. 2011) (internal quotation marks and citation omitted). But DCS need not provide every conceivable service or ensure the parent participates in the services offered. *Maricopa Cnty. Juv. Action No. JS-501904*, 180 Ariz. 348, 353 (App. 1994). When DCS fails to offer the very services that its consulting expert recommends, DCS has not made a reasonable effort to provide services. *Mary Ellen C. v. Ariz. Dep't of Econ. Sec.*, 193 Ariz. 185, 192, ¶ 37 (App. 1999).

**¶15** Mother's argument ignores that DCS requested Mother seek counseling before she completed the psychological evaluation, and she did

not comply with that directive or ask for assistance to do so. By the time Mother's evaluator recommended she receive individual counseling, Mother was no longer engaging in any services, including supervised visits. Mother also refused to make up missed visits with the children and failed to participate in drug testing. To the extent Mother argues DCS failed to consider her reduced intellectual capacity in offering services, the department supervisor's trial testimony to the contrary belies that argument. Accordingly, Mother has shown no error.

## CONCLUSION

¶16 Because Mother has shown no error and the court's order is supported by reasonable evidence, we affirm.



AMY M. WOOD • Clerk of the Court
FILED: AA