NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

IN RE TERMINATION OF PARENTAL RIGHTS AS TO J.W.

No. 1 CA-JV 23-0088
FILED 02-13-2024

---

Appeal from the Superior Court in Maricopa County
No. JD533566
The Honorable Joshua D. Rogers, Judge

**AFFIRMED**

---

COUNSEL

Denise L. Carroll Esq., Scottsdale
By Denise Lynn Carroll
*Counsel for Appellant*

Arizona Attorney General's Office, Tucson
By Michelle R. Nimmo
*Counsel for Appellee DCS*

The Huff Law Firm PLLC, Tucson
By Daniel R. Huff, Laura J. Huff
*Counsel for Appellee DCS*

Alexander Legal LLC, Chandler
By Amy Alexander
*Counsel for Appellee Child*

Curry Law Office PLC, Chandler
By Andrea Curry
*Counsel for Appellee Child*

---

**MEMORANDUM DECISION**

Judge Michael S. Catlett delivered the decision of the Court, in which Presiding Judge Angela K. Paton and Judge James B. Morse Jr. joined.

---

**C A T L E T T**, Judge:

**¶1**         Skye F. ("Mother") appeals the termination of her parental rights as to J.W. ("Child").  Mother argues the Department of Child Safety ("DCS") did not accommodate her by providing more reunification services and sufficient time and opportunity to participate in them.  We conclude DCS made a diligent effort to provide appropriate reunification services, and Mother was not entitled to additional time to utilize those services. We, therefore, affirm termination.

## FACTS AND PROCEDURAL HISTORY

**¶2**         Mother gave birth to Child on February 8, 2018.  Mother admitted that she abused substances during pregnancy, including marijuana, methamphetamine, methadone, and pills from her grandmother's medicine cabinet.  Her substance abuse continued after Child was born.  Mother tested positive for fentanyl in March 2020 and was hospitalized in August 2020 due to an overdose on her prescription of benzodiazepines.

**¶3**         Child has special medical needs, requiring appointments with professionals to address developmental delays and issues with his eyes and gait.  Mother did not follow up on Child's appointments and constantly needed to be reminded of them.  She also needed to be told to take Child to the emergency room when he was in "intense pain."  DCS concluded that Mother did not understand the extent of Child's disabilities, was unable to

provide for him, and did not have the parenting capacity to take him to the doctor or understand his needs.

¶4 In August 2020, DCS filed a petition alleging Child was dependent as to Mother. DCS then established an in-home safety plan, which prohibited Mother from having unsupervised contact with Child. Mother's grandparents supervised the safety plan. Within five days, Mother violated the plan by driving Child, unsupervised, to her behavioral clinic, where they were involved in a minor car accident. Mother was observed shaking and speaking inappropriately to Child. Consequently, DCS removed Child from Mother's care. Shortly thereafter, the juvenile court found Child dependent.

¶5 DCS scheduled a psychological evaluation for Mother. The doctor diagnosed Mother with unspecified trauma and stressor-related disorder, unspecified opioid-related disorder, and borderline intellectual functioning. He found a large discrepancy between Mother's self-report and her records, believed her ability to parent safely was poor, and expressed concern about her history of substance abuse and denial of such abuse. The doctor stated that, "while Mother is likely intellectually capable of learning the necessary parenting skills, she would likely require an additional 3 to 6 months of active involvement in services than is typically expected[.]"

¶6 In terms of reunification services provided, in September 2020, DCS referred Mother to a parent aide. By September 2021, DCS terminated parent-aide services because Mother was unsuccessful in addressing issues with impulse control, threat recognition, and resiliency. DCS also referred Mother to a Nurturing Parent Program ("NPP"), but Mother failed to participate, so the service ended. After later re-joining the NPP, Mother missed at least ten of seventeen scheduled sessions, and the provider determined Mother would not further benefit from the NPP due to her lack of participation. According to the NPP provider, Mother "was given a closing ceremony certificate per direction from [the practitioner's] boss, but [the practitioner] was informed later that it wasn't correct to give [Mother] a closing certificate as she did not complete enough of the lesson material and courses with [her] engaged in the program to complete successfully."

¶7 DCS referred Mother for random drug testing. Mother missed over half of the tests between July and December 2020, did not test between April and June 6, 2021, and was suspended from testing in July 2021. After Mother began participating in testing again in September 2021,

she missed multiple tests. Mother stopped participating again in October 2021. Mother again participated between May and August 2022, but still missed three scheduled tests during that time.

¶8 DCS provided Mother with outpatient substance abuse treatment services ("SOP"). DCS's initial attempt to provide those services was unsuccessful because Mother did not respond to three attempts to arrange a substance abuse assessment. Mother then enrolled in an SOP program in February 2022, but by March she had "attended 1 out of 8 sessions and [was] gaining minimal insight regarding the dynamics of mental health and substance use." Mother missed eight SOP sessions in April 2022, four in May 2022, two in June 2022, and four in July 2022. When Mother did attend, she sometimes was disoriented and struggled to stay awake, leading the provider to conclude she might be under the influence of illegal drugs or prescribed medication. Mother denied having a substance abuse issue.

¶9 Mother graduated from the SOP program in November 2022. Normally a twelve-week course, Mother took over six months to graduate because she would not accept responsibility for her substance-abuse issues and failed to regularly attend sessions. Mother told a clinician at the SOP provider that she was participating in required drug tests and was therefore sober. But the clinician testified that he later learned that statement was false—Mother was not undergoing drug tests at the time. Had he known the truth, it would have impacted Mother's completion of the SOP program. Mother also needed to complete a recovery maintenance program to finish the SOP program but failed to do so.

¶10 Lastly, Mother's DCS case manager suggested she seek help from the Family Involvement Center to increase compliance with DCS's requests for behavioral changes. Mother did not do so.

¶11 In April 2023, the juvenile court terminated Mother's parental rights. The court concluded DCS made diligent efforts to provide Mother with appropriate reunification services, Mother had been unable to remedy the circumstances causing Child's out-of-home placement, and termination was in Child's best interests because it would give him needed permanence and stability.

¶12 Mother timely appealed. We have jurisdiction. *See* A.R.S. § 8-235(A).

4

**DISCUSSION**

¶13 Mother argues DCS did not accommodate her disability in providing appropriate reunification services or sufficient time and opportunity to participate in such services. She asks for "additional time" to participate in reunification services and that the "requirements for completion be explained to her in a way that she can understand." Mother does not challenge the juvenile court's finding that DCS established a statutory ground for termination or that termination would be in Child's best interests. Mother only challenges the juvenile court's finding that DCS made a diligent effort to provide appropriate reunification services.

¶14 We will "affirm a termination order unless the juvenile court abuses its discretion or the court's findings are not supported by reasonable evidence." *Timothy B. v. Dep't of Child Safety*, 252 Ariz. 470, 474 ¶ 14 (2022). We will accept the juvenile court's factual findings if supported by reasonable evidence and inferences. *Brionna J. v. Dept't of Child Safety*, 255 Ariz. 471, ___ ¶ 30 (2023). We will not disturb the juvenile court's conclusions for insufficient evidence unless no one could reasonably find the evidence to be sufficient. *Id.* at ___ ¶ 31.

¶15 "Parents have a fundamental right to raise their children as they see fit, but that right is not without limitation." *Minh T. v. Ariz. Dep't of Econ. Sec.*, 202 Ariz. 76, 79 ¶ 14 (App. 2001). A juvenile court may terminate parental rights if DCS "has made a diligent effort to provide appropriate reunification services," the "child has been in an out-of-home placement for a cumulative total period of fifteen months or longer . . . the parent has been unable to remedy the circumstances that cause the child to be in an out-of-home placement and there is a substantial likelihood that the parent will not be capable of exercising proper and effective parental care and control in the near future." A.R.S. § 8-533(B)(8)(c).

¶16 To fulfill its reunification obligations, DCS is required to provide a parent with "the time and opportunity to participate in programs designed to help her become an effective parent." *Maricopa Cnty. Juv. Action No. JS-501904*, 180 Ariz. 348, 353 (App. 1994). DCS is not required, however, to provide "every conceivable service," nor is it "required to provide services that are futile" or have no "reasonable prospect of success." *Christina G. v. Ariz. Dep't Econ. Sec.*, 227 Ariz. 231, 235 ¶ 15 (App. 2011) (internal quotation marks and citations omitted).

¶17 The record does not support the notion that Mother's intellectual challenges entitle her to more time than she already received to

utilize reunification services. The doctor who conducted Mother's psychological evaluation testified at the termination hearing that Mother's intelligence is low, and he believed she needed approximately three to six additional months of involvement in services than was typically required.

**¶18**        Mother received significantly more than three to six additional months to remedy the circumstances resulting in Child's out-of-home placement. DCS provided nearly *thirty* months of services (August 2020 through February 2023). The legislature made the policy choice that termination should occur if a child is in out-of-home placement for more than fifteen months (and certain other conditions are present). *See* A.R.S. § 8-533(B)(8)(c). Even assuming the juvenile court can extend that fifteen-month period in certain cases when all conditions for termination are otherwise met, Mother has not established that it was required to do so here, when termination did not occur until thirty months after DCS filed the dependency petition.

**¶19**        The record supports the juvenile court's conclusion that DCS provided Mother with adequate reunification services prior to termination. From August 2020 to January 2023, DCS provided Mother with parent-aide services, parenting services, supervised visitation, drug testing, substance-abuse assessment and treatment, a psychological evaluation, and counseling. Mother was inconsistent in utilizing and attending those services.

**¶20**        Mother claims she had "no way of knowing what she was doing was wrong nor the opportunity to get the services that may have . . . resolved [her] issues." To the contrary, Mother had various ways to keep apprised of her status during the proceedings. The juvenile court notified Mother when it changed her case plan to termination and adoption based on the lack of progress during the dependency proceedings. Mother routinely received court reports from DCS during the proceedings, each explaining her lack of compliance and improvement. As the juvenile court noted, Mother also attended "periodic Report and Review Hearings and Pre-Trial Conferences over the course of [the] proceedings," which allowed her to "appear, discuss any progress, issues, or obstacle to progress, and necessary changes to the case plan or required services."

**¶21**        Mother contends DCS deceived her because two providers gave her certificates of completion for services. Mother argues that receiving those certificates led her "to believe that she would . . . ultimately be reunified [with Child]." But the juvenile court heard testimony from the NPP provider that Mother "did not complete enough of the lesson material

and courses . . . in [NPP] to complete [the program] successfully." Additionally, Mother falsely reported to the SOP provider that she was undergoing drug testing. The SOP provider testified that he relied on that false statement by providing Mother with a certificate of completion for the SOP program.

**¶22** Regardless, Mother's subjective beliefs about the prospects for reunification are not relevant to the objective analysis of whether DCS provided appropriate reunification services prior to termination. The juvenile court objectively analyzed the sufficiency of the services DCS offered and Mother's participation in those services. The juvenile court properly evaluated the evidence, including testimony from several service providers, and the court's conclusion that the reunification services DCS provided were sufficient was supported by "reasonable evidence and inferences." *Brionna J.*, 255 Ariz. at ___ ¶ 30. DCS was not required to ensure Mother adequately participated in the services provided or leave the possibility of reunification open for longer than 30 months. *See Christina G.*, 227 Ariz. at 235 ¶ 15; *Maricopa Cnty. Juv. Action No. JS-501568*, 177 Ariz. 571, 577 (App. 1994).

## CONCLUSION

**¶23** We affirm.



AMY M. WOOD • Clerk of the Court
FILED:  TM